

**LOS ANGELES** City Council members Paul Krekorian and Nury Martinez listen to council President Herb Wesson discuss the speaker card, which featured drawings of a burning cross and a man hanging from a tree.

IRFAN KHAN Los Angeles Times

# Critic says his 'stupid doodle' led to death threats, vandalism

[**Critic,** from B1]
with the Ku Klux Klan — and appeared to depict a KKK figure holding a sign that stated, "Herb = [N-word]."

Wesson, who is African American, was presiding over the day's committee meeting held in Van Nuys.

Two days later, officers arrested Spindler, 46, on suspicion of making threats against Wesson. Community leaders denounced the drawings as a hate crime. And the city's lawyers obtained a restraining order barring Spindler from coming near Wesson's home, vehicle or city office, but allowing him to speak at public meetings.

After the decision was announced Thursday, Wesson's office issued a brief statement.

"We are very disappointed in the district attorney's determination," said Wesson spokeswoman Vanessa Rodriguez. "We see Mr. Spindler's action as morally reprehensible, but we'll continue our work as public servants."

Spindler, an attorney who often represents immigrants facing the prospect of deportation, said he welcomed the district attorney's decision but was critical of her office explaining a legal decision with remarks about his purportedly "reprehensible" behavior.

"That is completely inappropriate for a lawyer making objective analysis," Spindler said. "They are criticizing me for my public participation. It shouldn't be there. It's not part of the law."

Spindler has maintained that he was being silenced for speaking out against Measure RRR, a ballot measure that sought to reform the scandal-plagued Department of Water and Power. Voters rejected the measure in November.

In an interview, Spindler said the comment card's burning cross referred to the corruption destroying the city, and he contended the person hanging from a tree — evocative of lynching — symbolized DWP customers' suffering from rate hikes.

Wesson said he viewed the comment card as a potential threat to him, his family, city workers and City Hall visitors. He said the comment card recalled the history of racially motivated attacks on the black community.

"It is not OK to do that to me," Wesson, the first black president of the City Council, said at a news conference shortly after Spindler was arrested. "It is not OK to do that to us in the year 2016. And when I'm talking about us, I'm talking about all of us — white, yellow, black and brown."

Complaints over Spindler's behavior were filed with the State Bar of California, the licensing arm of the state's judicial branch. But the state bar declined earlier this year to have Spindler disciplined or disbarred, in part because the lawyer had not been charged.

The bar "does not agree with the racist implications of Mr. Spindler's drawing," deputy trial counsel Ross Viselman wrote in a letter, "but we cannot bring disciplinary charges against him for exercising his right to free speech."

Spindler said the public condemnation from Wesson and others drew a flurry of personal threats.

"I handed in a speaker card with a stupid doodle," he said.

As a result, he said, he have received death threats and vandalism to his car.

"I had to go into hiding," he added. "It's very destructive to my life."

Shortly after his May arrest, Spindler filed a claim against the city — the first step in a lawsuit proceeding — and alleged violations of civil rights, illegal detention and other charges.

He said Thursday that he was still weighing whether to pursue a lawsuit against the city.

Separately, court records show he filed a lawsuit in July against the city over his Nov. 10, 2015, arrest at a police commission meeting.

The city's attempts to crack down on inflammatory speeches at City Hall have sometimes backfired.

In 2014, the city agreed to pay $215,000 to settle a free-speech lawsuit brought by Michael Hunt, an African American man who was tossed out of a city commission meeting for wearing a KKK-like hooded outfit and a T-shirt with a racial slur on it.

matt.hamilton
@latimes.com
Twitter: @MattHjourno
dakota.smith@latimes.com
Twitter: @DakotaCDSmith



**OBITUARY NOTICES**

**APPEL, Marshall Albert**

[obituary text partially illegible]

**CHAVEZ, Arthur R.**
September 22, 1942 – December 20, 2016

[obituary text partially illegible]

**CUNNINGHAM, Helen L.**
Helen L. Cunningham (90) passed away with her family by her side on Sunday, December 18th, 2016.
Funeral arrangements are pending at this time.

71



ATTACHMENT G

72

BACK



### NOTICE OF LOBBYING REGISTRATION

If you are receiving compensation to make this appearance, the City's municipal lobbying ordinance (L.A.M.C. Section 48.01 et seq., as amended) may require you to register and report your lobbying activity. For more information about the City's lobbying law, contact the City Ethics Commission at (213) 978-1960, by fax at (213) 978-1988 or at 200 North Spring Street, 24th Fl – City Hall, Los Angeles, CA 90012.

Information about lobbying the City of Los Angeles may also be found on the internet by accessing the Ethics Commission site on the City of Los Angeles' home page at http://ethics.lacity.org



73

# DECLARATION OF HERMAN J. WESSON, JR.

I, HERMAN J. WESSON, JR, state and declare as follows:

1. That I am the elected Councilmember for the Tenth District of the City Council of the City of Los Angeles ("City"), and have held my office since 2005;

2. That my work location, physical offices, and my staff are located primarily in City Hall, Room 430, 200 N. Spring Street, Los Angeles, CA 90012, and my district field office is located at 1819 S. Western Avenue, Los Angeles, CA 90006;

3. That in addition to my duties as a council member representing the residents of the Tenth District, I have also served as the President of the City Council since 2011, and as such preside over the Council meetings;

4. That in the course of Council meetings, including those conducted off site, the public is present. Members of the public may comment on the agenda items, and also have the right to make general public comment. Members of the public who wish to give public comment fill out a speaker card, which is given to the Sergeant-at-Arms and then to the City Clerk, and finally to me. City Council meetings are primarily conducted in the Council Chambers of City Hall, but also are held in Van Nuys, at the Van Nuys City Hall. Council committees also meet at City Hall and in Van Nuys;

5. That on May 11, 2016, I presided over a special meeting of the Council's Elections, Inter-Governmental Relations & Neighborhoods Committee in the Van Nuys City Hall. The meeting began at approximately 6:00 p.m. The subject of the meeting was governance reform at the Department of Water and Power;

6. That at approximately 7:30 p.m., I was handed a speaker card submitted by a member of public known to me as Wayne Spindler. Spindler attends many Council meetings and makes frequent comment. In this case the speaker card, a copy of which is attached as Attachment "A", identified the submitter as "Wayne from Encino". On the front of the card in blue ink were depictions of (1) a tree with a human figure hanging from a noose, (2) a character who was clearly depicting a Klu Klux Klan member holding a noose in one hand and a sign in the other saying "Herb=Nigger", and (3) a burning cross. On the back of the card in large block letters was written "Fuck-U Herb";

1

DECLARATION OF HERMAN J. WESSON, JR.

exhibit H

74

7. That I was stunned at the writing and drawings on the card, and while I found the card's message threatening to me personally raising concerns for my personal safety, I allowed Spindler to provide his public comment. Shortly thereafter, I described the writing and drawings on the card to those in attendance. When I did so, Spindler began to shout out, and he refused to quiet himself causing a disruption. He was removed from the meeting by the uniformed officers present, as he was creating a disruption;

8. That the speaker card submitted by Spindler was clearly targeted towards me as an African-American, and contained depictions of violence recalling the history of the Klu Klux Klan towards African-Americans such as myself;

9. That I took the depictions as a personal and direct threat to me;

10. That the depictions and statements on the card had nothing to do with the DWP agenda item;

11. That based upon Wayne Spindler's written statements and depictions, his specific targeting of me, and his easy access to me as a public figure without assigned security, I am afraid for my safety, and the safety of my office staff and my family when Wayne Spindler is near;

I declare that the foregoing statements are based upon my personal knowledge and that the foregoing is true and correct under penalty of perjury under the laws of the State of California and I could and would so testify if required to do so.

Executed this 19th day of May, 2016, at Los Angeles, California.

*Herman J. Wesson, Jr.*
Herman J. Wesson, Jr.

DECLARATION OF HERMAN J. WESSON, JR.

Case 2:17-cv-00250-JLS-E Document 1-1 Filed 01/11/17 Page 6 of 18 Page ID #:77

# Did LA Council President Wesson Vote Illegally for More than 11 Years?

DANIEL GUSS / 10 OCTOBER 2016



PREVIOUS ARTICLE
Curb Big Pharma's Price Gauging: Vote 'Yes' on CA Prop. 61 (/index.php/los-angeles/11935-curb-big-pharma-s-price-gauging-vote-yes-on-ca-prop-61)

NEXT ARTICLE
Herb Wesson: The Man Who Would be Mayor (/index.php/los-angeles/11938-herb-wesson-the-man-who-would-be-mayor)

@THE GUSS REPORT-According to voter registration records, Herb Wesson, the current Los Angeles City Council president, may have voted illegally for up to 11½ years between November 1993 and June 2005 by providing false address information -- and confirming that false information -- each time he voted. Whether the LA County District Attorney Jackie Lacey's Public Integrity Division gives him a James Comey/Hillary Clinton free pass remains to be seen.

(/#facebook) (/#twitter) (/#google_plus) (https://www.addtoany.com/share#url=http%3A%2F%2Fwww.citywatchla.la-council-president-wesson-vote-illegally-for-more-than-11-years&title=Did%20LA%20Council%20President%20Wesson%20Vote%20Illega

As shown in my recent *CityWatch* (http://www.citywatchla.com/index.php/the-la-beat/11825-president-wesson-la-s-fabricator-in-chief) article, Wesson could not have done this by mistake because during that entire time he was in close proximity to, or at the seat of, the pinnacle of local political power where voting rules are an entry-level subject. This includes being Chief of Staff to LA County Supervisor Yvonne Burke, Chief of Staff to LA City Councilmember Nate Holden, a member of the California State Assembly, and the CA Assembly's Speaker, directly overseeing voting redistricting for the entire state.

As the DA looks into the evidence, given Wesson's propensity to mislead, there is another thing they should simultaneously investigate: Did Wesson actually live where he claimed to live on his 2005 LA City Council campaign documents and throughout his first term on City Council? Again, public records cast doubt on Wesson's claims. The DA needs to dig deeply into his personal records to determine the truth … just like they did when they investigated and charged Wesson's former colleagues Roderick Wright and Richard Alarcon for *their* residency lies.

76

At the end of my September 19, 2016 piece, I set forth how Wesson scrambled to establish residency within the City of Los Angeles when, in 2005, LA City Councilmember Martin Ludlow abruptly decided to vacate that position just two years into his first term.

NOTE: For aficionados of California's incestuous political environment, according to *Wikipedia*, in 2002, Ludlow was a Wesson staffer in Sacramento; he was Antonio Villaraigosa's Chief of Staff prior to that, leading more than a few to believe that Ludlow was just a placeholder on the LA City Council until Wesson finished his term as Assembly Speaker. Talk about a stacked deck! When Ludlow ran for LA City Council, he beat Wesson's present day Chief of Staff Deron Williams. The Harlem Globetrotters and the Washington Generals should take note.

And we pick up the story from there ...

With Ludlow's "sudden" decision to leave LA City Council in 2005 (for a union leadership job that he gave up shortly thereafter when charged with a felony,) a special election to replace him was scheduled for November 8, 2005. Because the first day for candidates to file paperwork to run for that office was July 22, 2005, candidates were required by law to be a resident of Council District 10 no later than 30 days prior to that, or June 22, 2005.

On June 2, 2005, the always nattily attired Wesson changed his voter registration address from his home at 5230 Bedford Avenue in an affluent unincorporated part of LA County (i.e. outside of the City of Los Angeles) to 3914 W. Adams Blvd, a multi-unit building with bars on the windows (https://drive.google.com/file/d/0BwXAuqQJKBGwMWpEWWhoQWx6RlE/view) in a high-crime neighborhood within the Council District 10 in which he had to quickly establish residency. But Wesson was never at any time registered to vote at what he claimed was his prior address on Bedford Avenue. This <u>necessarily</u> means that Wesson either lied when voting from 1993 to 2005 or lied on his June 2, 2005 voter registration...or both.

Now let's follow Wesson's bouncing-ball-of-sudden-address-changes....

- <u>June 13, 2005</u> - The LA County Registrar-Recorder/LA County Clerk stamped as official Wesson's new voter registration at the West Adams Boulevard address.

Did Wesson actually live there and do the things that establish a domicile like turning on the utilities, changing the address on his payroll, medical and car insurance records? Did he change his address with the United States Postal Service? While only the District Attorney can subpoena those records, this much we do know: His wife Fabian did not change her address to the W. Adams Boulevard address, raising the question of whether *anyone* named Wesson ever lived there at all.

The reason why Wesson used that address is simple: He was unable to (legally) raise funds to run for LA City Council until he lived within the District 10. That is why on:

- <u>June 16, 2005</u> - Wesson signed, under penalty of perjury, his LA City Ethics documents declaring his intent to run for Ludlow's vacant District 10 seat and that he resided at the W. Adams Boulevard address, which is located within it. Wesson signed them that morning and were received and stamped by the City's Ethics Commission at 11:37am.

But just six days later -- you read that right -- Wesson changed his address again.

- <u>June 22, 2005</u> - Wesson changed his voter registration from W. Adams Boulevard to another address within District 10, 1022 S. Citrus Avenue, an address to which his wife Fabian's voter registration was simultaneously changed at 1:15pm.

So if Fabian Wesson's voter registration was changed simultaneously with Herb's to the S. Citrus Avenue address on June 22, 2005, why was it not simultaneously changed 10 days earlier when he claimed, on June 13, 2005, that he resided at the W. Adams Boulevard address? It's because he only needed to establish *his* residency within District 10, not hers. The million dollar legal question is: Did Herb Wesson establish a domicile on W. Adams Boulevard during that handful of days?

According to the California Secretary of State, a *"'domicile' is defined as the place where you live, where your habitation is fixed, and where you intend to remain and return to whenever you are absent from it. (Elections Code sections 321, 349, 2020-2034)."*

Wesson signed under penalty of perjury on both his June 2, 2005 voter registration form and his multiple June 16, 2005 Los Angeles City Ethics campaign forms that he resided at 3914 W. Adams Boulevard, an address to which his wife did not change her address, and an address which he abandoned just six days later.

Common sense dictates that Wesson did nothing to establish a bonafide domicile at the W. Adams Boulevard address. It is absolutely necessary for the District Attorney – or the FBI – to subpoena all related records and find out the truth, and just how long the Wessons lived at their subsequently claimed domicile on S. Citrus Avenue too. They both claimed to reside there from June 22, 2005 through March 7, 2008 (Herb) and April 3, 2008 (Fabian) respectively. The smart money says he (and therefore she) lived back on Bedford Avenue, outside of the City of Los Angeles, at least part of the time -- a crime if proven true since officials must live within the community they represent.

Recording Requested By Internal Revenue Service When recorded mail to

INTERNAL REVENUE SERVICE
300 N Los Angeles St Mail Stop 5027
LOS ANGELES, CA 90012

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

**20100618123**

May 06, 2010 AT 8:04 AM

FEE $18.00

COURT RECORDING INFORMATION:
Liber   Page   UCC No.   Serial No.
                         20091324705

For Use by Recording Office

**Form 668 (Z)** (Rev. 10-2000)

Department of the Treasury - Internal Revenue Service
## Certificate of Release of Federal Tax Lien

Area: SMALL BUSINESS/SELF EMPLOYED AREA #7
Lien Unit Phone: (800) 913-6050

Serial Number: 575023209

I certify that the following-named taxpayer, under the requirements of section 6325 (a) of the Internal Revenue Code has satisfied the taxes listed below and all statutory additions. Therefore, the lien provide by Code section 6321 for these taxes and additions has been released. The proper officer in the office where the notice of Internal revenue tax lien was filed on   08/28/2009   is authorized to note the books to show the release of this lien for these taxes and additions.

Name of Taxpayer   HERMAN J  FABIAN R WESSON

Residence   1956 VIRGINIA RD
            LOS ANGELES   CA   90016-1730

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2005 | XXX-XX-8370 | 04/28/2008 | 05/28/2018 | 22375.57 |

Place of Filing
COUNTY RECORDER
LOS ANGELES

Total  $  22375.57

This notice was prepared and signed at   OAKLAND, CA  , on this, the   28   day of   April  , 2010.

Signature                                  Title   TERRITORY MANAGER

Copyright 2016 Los Angeles County Registrar-Recorder/County Clerk

Title365

Clear Recon Corp.
AND WHEN RECORDED MAIL TO
Clear Recon Corp.
4375 Jutland Drive Suite 200
San Diego, California 92117

T.S. No: 038189-CA
APN: 5061-004-023
Property Address: 1956 VIRGINIA ROAD, LOS ANGELES, CALIFORNIA 90016

# NOTICE OF RESCISSION OF NOTICE OF DEFAULT

**NOTICE IS HEREBY GIVEN:** That MUFG UNION BANK, N.A. FKA UNION BANK, N.A. FKA UNION BANK OF CALIFORNIA, N.A., as Beneficiary under a Deed of Trust dated 10/10/2007, executed by [...] WESSON, JR. AND FABIAN WESSON, HUSBAND AND WIFE, as Trustor, to secure certain obligations in favor of the beneficiary thereunder, recorded 10/16/2007, as Instrument No. 20072364104, of Official Records in the Office of the Recorder of Los Angeles County, California, describing land therein as more fully described in the above referenced deed of trust.

said obligations including one note for the sum of $759,999.00.

Whereas, the present beneficiary under that certain Deed of Trust herein above described, heretofore deposed to the Trustee thereunder written Declaration of Default and Demand for Sale, and whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described; and whereas, a Notice of Default was recorded on the day and in the book and page set forth below:

Notice was recorded on 1/27/2016, as Instrument No. 20160092164 in the office of the Recorder of Los Angeles County, California of Official Records.

**NOW THEREFORE, NOTICE IS HEREBY GIVEN** that the present Beneficiary under the Trust, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given.

Dated: MAR 07 2016

CLEAR RECON CORP.

By: _____

# DECLARATION OF HUGO S. ROSSITTER

I, HUGO S. ROSSITTER, state and declare as follows:

1. That I am an attorney duly licensed to practice in the State of California;

2. That I am a Deputy City Attorney for the City of Los Angeles Labor Relations Division of the Los Angeles City Attorney's Office. In my current position I am responsible for receiving and analyzing workplace violence complaints within the City of Los Angeles to determine whether or not a corporate restraining order should be sought;

3. That I am filing a Petition of Employer for Injunction Prohibiting Violence or Threats of Violence Against Employees in the matter of City of Los Angeles v Wayne Spindler;

4. That I am seeking a restraining order on behalf of Herman J. Wesson, Jr., the victim herein, who has reported threats of violence and a course of conduct by the Defendant which put the victim in fear of his life and the lives and safety of employees of the City of Los Angeles;

5. Defendant was not served with the Application because (1) Defendant gave a speaker card during a City Council meeting that depicted violent conduct such as hanging; (2) Defendant was arrested on criminal threat charges, and (3) I am reluctant to send our City Attorney Document Services staff out to serve Defendant under these circumstances, whereas a Temporary Order and Notice of Hearing, if granted, will be served by police officers in the Threat Management Unit of the Los Angeles Police Department.

I declare that the foregoing it true and correct under penalty of perjury under the laws of the State of California.

Executed this 27th day of April, 2016, at Los Angeles, California.

HUGO S. ROSSITTER

Declaration of Hugo S. Rossitter

Exhibit I

80

Case 2:17-cv-00250-JLS-E Document 1-1 Filed 01/11/17 Page 11 of 18 Page ID #:82

# CITYWATCH
Politics. Perspectives. Participation.

WED, JAN 11

## LA Prosecutor, Fake Businesses ... and, Why It Matters

DANIEL GUSS / 18 JULY 2016

LOS ANGELES (/INDEX.PHP/LOS-ANGELES)

  

PREVIOUS ARTICLE
DWP Reform: 'A Rose by Any Other Name' (/index.php/los-angeles/11479-dwp-reform-a-rose-by-any-other-name)

NEXT ARTICLE
LA Pulse ... Vote Now: Should Education at Cal State Universities be Free? (/index.php/los-angeles/11482-la-pulse-vote-now-should-education-at-cal-state-universities-be-free)

THE GUSS REPORT-Hugo Rossitter, a veteran Los Angeles Deputy City Attorney, is not to be trusted ... or so it would seem if you listen to ... Hugo Rossitter. Or, consider his dubious documents and websites.

A simple inquiry about inconsistencies on a recent affidavit he filed led to bizarre denials from him about two businesses listed on his Linked-In profile – businesses he claims are not and never have been active despite extensive evidence to the contrary.

The subjects are tied together because, as the phrase goes, *falsus in uno, falsus in omnibus,* or, *if a witness is lying about one thing, he may be lying about everything.*

A few weeks before the 4th of July holiday, I called Rossitter at his City Hall office to ask about the affidavit he wrote to obtain a temporary restraining order (TRO) on behalf of Herb Wesson, Los Angeles City Council president, against Wayne Spindler, an Encino immigration attorney, who wrote and drew reprehensible and racist content on a speaker card that he submitted to Wesson.

After validating the affidavit's authenticity, Rossitter could not explain why he signed it under penalty of perjury on April 27, *fifteen days prior to the actual Wesson/Spindler incident on May 11.* He similarly lacked explanation on why the Petitioner on related forms is listed as the Office of the City Attorney rather than the City of Los Angeles, since it is a workplace violence matter and Wesson works for the city. (The subsequent use of the boilerplate form, according to another City Attorney staffer, a case where Councilmember Paul Krekorian *pro se* sought a restraining order against Lee James Jamieson, the Petitioner is correctly listed as the City of Los Angeles).

81

Rossiter could also not explain Ms. E's documented injunction, which is usual Civil Court, as opposed to TRO, which is usually Family Court, or what injunctive relief he sought, though both are technically injunctions.

The next questions caused Rossiter to stop speaking altogether.

Why were Spindler's criminal and TRO hearings scheduled to take place at the same time in different courthouses? And, given the totality of these inconsistencies, was he engaged in a premeditated SLAPP action against Spindler?

SLAPP is a Strategic Lawsuit Against Public Participation, a meritless legal entanglement that powerful entities such as governments use to suppress critics by overwhelming their time, freedom and financial resources.

Instead of denying it, Rossiter referred me to Rob Wilcox, Director of Community Engagement and Outreach for City Attorney Mike Feuer. Wilcox said the date was due to Rossiter's "sloppy" work. He could not explain why the Petitioner was listed incorrectly. And he denied that the city *ever* engages in SLAPPs.

But Wilcox too stopped talking when told of a 2006 Appeals court ruling against Rossiter and his boss Vivienne Swanigan, both working for then-LA City Attorney Rocky "Crash" Delgadillo, in favor of animal activist group Animal Defense League's anti-SLAPP motion. More on Swanigan further down.

Rossitter's background is curious. Admitted to the California Bar in 1978, he went on inactive status from 1980 to 1995. After a stint with local television station KCAL-9, he joined the City Attorney's office in 2002, primarily handling workplace violence issues.

New job notwithstanding, at the same time, Rossiter got a real estate broker's license and started two legal consulting businesses (See complete screenshots of **WVPrevent** (https://picasaweb.google.com/114439799675406002891/6308341999112499409?authkey=GvIsRgCNKpgsuz6YitpAE&feat=directlink) and **Southland Mediation** (https://picasaweb.google.com/114439799675406002891/6308342489389622385?authkey=GvIsRgCMm1gaPYqPD7Dg&feat=directlink)) whose websites have the same mailing address and phone number, which I called twice on the 4th of July. Rossitter answered both with a business-like, "This is Hugo, how can I help you?"

I asked Rossiter why his businesses, which *are* on his Linked-In page (https://picasaweb.google.com/114439799675406002891/6308342922872863409?authkey=GvIsRgCNqDzeqE2_bF6gE&feat=directlink), are *not* listed with the California Secretary of State, City of Beverly Hills or City of Los Angeles Department of Finance.

"They are not active," he responded. When asked *when* they became inactive, he said, "They have never been active."

In other words, Rossitter would have you believe that two businesses listed on his Linked-In page as active since 2002 and 2003, with functioning multi-page websites, active fax and phone numbers (that he personally answers), email, street and mailing addresses, biographies and photos of him – and only of him – with claims of successes achieved for clients, his fees for those services ($395 per hour with a four-hour minimum), and what it costs to reschedule ($400 for a full day or $200 for a half day) is all just for show.

"I just have those websites in case I *want* to run businesses like them someday," he implausibly offered after a long pause.

Told about abundant proof that those businesses are, indeed, functioning, Rossiter replied colorfully when asked whether he pays taxes on revenue from those businesses, takes a home office tax deduction, if he asked for and got permission from the city to have outside earned income, and if he submitted a required Statement of Economic Interest. He again stopped talking when asked whether, if moonlighting as a private attorney, he maintains a client trust account.

82

Rossitter's disclosure documents — one approved by Swanigan — provided to me, the Ethics Commission and begrudgingly by a Feuer deputy show dates crossed out and massive gaps, particularly for his WV Prevent enterprise. Their income level claims are inconsistent with success claims on his websites. And his web pages promise "real time" responses that conflict with city policy on using city time and assets for outside employment.

And this is why it matters. Rossitter gets a prosecutor's unspoken benefit of the doubt in court because most judges are former prosecutors. His credibility impacts the freedom, safety and finances of everyone involved in his cases. His dubious work on TROs, history of proven SLAPP activity and denials that neither business was *ever* functioning are red flags requiring investigation by LA District Attorney Jackie Lacey's Public Integrity Division and the California Bar Association.

If it is determined the city violated Spindler's rights (who has filed a $775,000 claim against the city) and caused him economic harm, the taxpayers may end up paying the piper. It would not be the first time the taxpayers did that for outspoken, sometimes boorish, gadflies, either. Rossitter's credibility will come into question.

A closing thought on that TRO: Wesson's colleague, LA City Councilmember Curren Price, who is African-American, said Spindler should be made an example of. But days later, Price approached Spindler outside of a committee meeting, shook his hand chuckling "PDQ. That is a good one. You got me." Is that why criminal charges have not been filed, and might not ever be, against Spindler? And what, if anything, did Rossitter have to do with it?

*(Daniel Guss, MBA, is a contributor to CityWatchLA, KFI AM-640, Huffington Post, Los Angeles Times, Los Angeles Daily News, Los Angeles Business Journal, Los Angeles Magazine and others. He blogs on humane issues at http://ericgarcetti.blogspot.com/ (http://ericgarcetti.blogspot.com/). The opinions expressed by Daniel Guss are his own and do not necessarily represent the opinions of CityWatch.) Edited for CityWatch by Linda Abrams.*

(/#facebook)    (/#twitter)    (/#google_plus)
(https://www.addtoany.com/share#url=http%3A%2F%2Fwww.citywatchla. angeles%2F11481-la-prosecutor-fake-businesses-and-why-it-matters&title=LA%20Prosecutor%2C%20Fake%20Businesses%20%E2%80%A(

2 Comments    CityWatch Los Angeles                                           Login

Recommend    Share                                                            Sort by Best

**SZwartz**
6 months ago

This is a serious black mark on the City Attorney's Office, which generally is a fine law firm. Many law firms in LA are sleazy from start to finish and the City Atty did have trouble with ethics when Rocky was there, but over time, the City Attorney Office has been one the better law firms in the city.

Nonetheless, it should be broken into 2 separate agencies -- one is solely the city's attorney and the other which does criminal matters including prosecuting corrupt mayors and councilmembers. As it stands now, the City Atty is forbidden for prosecuting corrupt councilmembers no matter how much evidence it has against them because the City Attorney is their attorney -- it is not the Public's Attorney.

That leaves us only with the DA -- Ha! What a joke.

Reply

**Dan** → SZwartz
6 months ago

Great points! I suspect that Rossitter has a lot of explaining to do, and not just to Feuer. And as reprehensible as the content sent to Wesson was, Rossitter's "sloppy" work could end up costing the taxpayers a bundle.

Reply

82A

Number of pages attached to this form, if any: 5

Date: 5/19/16

_(signature)_

I declare under penalty of perjury under the laws of the State of California that the information above and on all attachments is true and correct.

Date: 5/19/16

_Type or print your name_

Betty McHenry

**This is not a Court Order.**

Petition for Workplace Violence Restraining Orders
(Workplace Violence Prevention)

WV-100, Page 6 of 6

Page 1 of 1



Clecks

http://www.trbimg.com/img-5642578e/turbine/la-me-ln-police-commission-president-goals-201-001/600/6...  1/1/2016

exhibit J

84

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself [X] )

Wayne Spindler

**DEFENDANTS** ( Check box if you are representing yourself [ ] )

City of Los Angeles; Herman J. Wesson JR; Hugo S. Rossitter; Eric Reade; Nelly Lara-Mercado; And Does 1 to 10

**(b) County of Residence of First Listed Plaintiff** L.A.
(EXCEPT IN U.S. PLAINTIFF CASES)

**County of Residence of First Listed Defendant** L.A.
(IN U.S. PLAINTIFF CASES ONLY)

**(c) Attorneys** (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information.

Wayne Spindler
P.O. Box 16501
Encino, CA. 91416-6501
(213) 381-1403

**Attorneys** (Firm Name, Address and Telephone Number) If you are representing yourself, provide the same information.

L.A. City Attorney, Office of the City Attorney
200 N. Main St
L.A. CA 90012 (213) 978-7183

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- [ ] 1. U.S. Government Plaintiff
- [ ] 2. U.S. Government Defendant
- [X] 3. Federal Question (U.S. Government Not a Party)
- [ ] 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business in this State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. ORIGIN** (Place an X in one box only.)

- [X] 1. Original Proceeding
- [ ] 2. Removed from State Court
- [ ] 3. Remanded from Appellate Court
- [ ] 4. Reinstated or Reopened
- [ ] 5. Transferred from Another District (Specify)
- [ ] 6. Multidistrict Litigation - Transfer
- [ ] 8. Multidistrict Litigation - Direct File

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** [X] Yes [ ] No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** [ ] Yes [X] No   [ ] **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 USC §1983 US Civil Rights violated by False Arrest and retaliation for Free Speech and Whistle Blower

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| [ ] 375 False Claims Act | [ ] 110 Insurance | [ ] 240 Torts to Land | [ ] 462 Naturalization Application | **Habeas Corpus:** | [ ] 820 Copyrights |
| [ ] 376 Qui Tam (31 USC 3729(a)) | [ ] 120 Marine | [ ] 245 Tort Product Liability | [ ] 465 Other Immigration Actions | [ ] 463 Alien Detainee | [ ] 830 Patent |
| [ ] 400 State Reapportionment | [ ] 130 Miller Act | [ ] 290 All Other Real Property | **TORTS** | [ ] 510 Motions to Vacate Sentence | [ ] 840 Trademark |
| [ ] 410 Antitrust | [ ] 140 Negotiable Instrument | **TORTS PERSONAL INJURY** | **PERSONAL PROPERTY** | [ ] 530 General | **SOCIAL SECURITY** |
| [ ] 430 Banks and Banking | [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 310 Airplane | [ ] 370 Other Fraud | [ ] 535 Death Penalty | [ ] 861 HIA (1395ff) |
| [ ] 450 Commerce/ICC Rates/Etc. | [ ] 151 Medicare Act | [ ] 315 Airplane Product Liability | [ ] 371 Truth in Lending | **Other:** | [ ] 862 Black Lung (923) |
| [ ] 460 Deportation | [ ] 152 Recovery of Defaulted Student Loan (Excl. Vet.) | [ ] 320 Assault, Libel & Slander | [ ] 380 Other Personal Property Damage | [ ] 540 Mandamus/Other | [ ] 863 DIWC/DIWW (405 (g)) |
| [ ] 470 Racketeer Influenced & Corrupt Org. | [ ] 153 Recovery of Overpayment of Vet. Benefits | [ ] 330 Fed. Employers' Liability | [ ] 385 Property Damage Product Liability | [ ] 550 Civil Rights | [ ] 864 SSID Title XVI |
| [ ] 480 Consumer Credit | [ ] 160 Stockholders' Suits | [ ] 340 Marine | **BANKRUPTCY** | [ ] 555 Prison Condition | [ ] 865 RSI (405 (g)) |
| [ ] 490 Cable/Sat TV | [ ] 190 Other Contract | [ ] 345 Marine Product Liability | [ ] 422 Appeal 28 USC 158 | [ ] 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| [ ] 850 Securities/Commodities/Exchange | [ ] 195 Contract Product Liability | [ ] 350 Motor Vehicle | [ ] 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | [ ] 870 Taxes (U.S. Plaintiff or Defendant) |
| [X] 890 Other Statutory Actions | [ ] 196 Franchise | [ ] 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 871 IRS-Third Party 26 USC 7609 |
| [ ] 891 Agricultural Acts | **REAL PROPERTY** | [ ] 360 Other Personal Injury | [X] 440 Other Civil Rights | [ ] 690 Other | |
| [ ] 893 Environmental Matters | [ ] 210 Land Condemnation | [ ] 362 Personal Injury-Med Malpractice | [ ] 441 Voting | **LABOR** | |
| [ ] 895 Freedom of Info. Act | [ ] 220 Foreclosure | [ ] 365 Personal Injury-Product Liability | [ ] 442 Employment | [ ] 710 Fair Labor Standards Act | |
| [ ] 896 Arbitration | [ ] 230 Rent Lease & Ejectment | [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability | [ ] 443 Housing/Accommodations | [ ] 720 Labor/Mgmt. Relations | |
| [ ] 899 Admin. Procedures Act/Review of Appeal of Agency Decision | | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 445 American with Disabilities-Employment | [ ] 740 Railway Labor Act | |
| [ ] 950 Constitutionality of State Statutes | | | [ ] 446 American with Disabilities-Other | [ ] 751 Family and Medical Leave Act | |
| | | | [ ] 448 Education | [ ] 790 Other Labor Litigation | |
| | | | | [ ] 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:** Case Number:

CV-71 (07/16)     CIVIL COVER SHEET     Page 1 of 3

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A: Was this case removed from state court?<br>☐ Yes ☒ No<br><br>If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☒ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B: Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?<br>☐ Yes ☒ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>check one of the boxes to the right ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| | | ☐ NO. Continue to Question B.2. |
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>check one of the boxes to the right ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C: Is the United States, or one of its agencies or employees, a DEFENDANT in this action?<br>☐ Yes ☒ No<br><br>If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>check one of the boxes to the right ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| | | ☐ NO. Continue to Question C.2. |
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>check one of the boxes to the right ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D: Location of plaintiffs and defendants? | A.<br>Orange County | B.<br>Riverside or San Bernardino County | C.<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| D.1. Is there at least one answer in Column A?<br>☐ Yes ☒ No<br><br>If "yes," your case will initially be assigned to the<br>SOUTHERN DIVISION.<br>Enter "Southern" in response to Question E, below, and continue from there.<br>If "no," go to question D2 to the right. ➡ | D.2. Is there at least one answer in Column B?<br>☐ Yes ☒ No<br><br>If "yes," your case will initially be assigned to the<br>EASTERN DIVISION.<br>Enter "Eastern" in response to Question E, below.<br>If "no," your case will be assigned to the WESTERN DIVISION.<br>Enter "Western" in response to Question E, below. ⬇ |
|---|---|

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | Western |

| QUESTION F: Northern Counties? | | |
|---|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes | ☒ No |

CV-71 (07/16)            CIVIL COVER SHEET            Page 2 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**? ☒ NO ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?
☐ NO ☒ YES

If yes, list case number(s): _CV-16-5655 JLS (E)_

**Civil cases** are related when they (check all that apply):

☒ A. Arise from the same or a closely related transaction, happening, or event;

☒ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☒ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _[signature]_   DATE: _1/11/2017_

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |