1  MICHAEL FEUER, City Attorney (SBN: 111529)
2  THOMAS H. PETERS, Chief Assistant City Attorney (SBN: 163388)
   GABRIEL S. DERMER, Assistant City Attorney (SBN: 229424)
3  **DORA A. GONZALEZ,** Deputy City Attorney (SBN: 210947)
4  200 N. Main Street, City Hall East, Room 675
   Los Angeles, CA 90012
5  Telephone (213) 978-7561, Facsimile (213) 978-7011
6  dora.gonzalez@lacity.org

7
   Attorneys for Defendants
8  CITY OF LOS ANGELES, HERMAN J. WESSON JR.,
9  HUGO S. ROSSITTER; ERIC READE; NELLY NAVA-MERCADO

10            **UNITED STATES DISTRICT COURT**

11            **CENTRAL DISTRICT OF CALIFORNIA**
12

13 | WAYNE SPINDLER,
14 |
15 |                    Plaintiff,
   |                    In Propria Persona
16 |
17 |          vs.
18 |
19 | CITY OF LOS ANGELES; HERMAN
   | J. WESSON JR.; HUGO S.
20 | ROSSITTER; ERIC READE; NELLY
   | NAVA-MERCADO; and Does 1-10,
21 |
22 |
23 |                    Defendants.
24 |

   Case No.: 2:17-cv-00250-JLS-E

   Complaint Filed: January 11, 2017

   **DEMAND FOR JURY TRIAL**

   [Hon. Josephine L. Staton]

   **DEFENDANTS' MEMORANDUM
   OF POINTS AND AUTHORITIES
   IN SUPPORT OF ITS MOTION TO
   DISMISS PURSUANT TO
   FEDERAL RULES OF CIVIL
   PROCEDURE 12 (b)(6) AND ITS
   MOTION TO STRIKE PURSUANT
   TO FEDERAL RULES OF CIVIL
   PROCEDURE 12 (f)**

   Date: August 4, 2017
   Time: 9:30 a.m.
   Ctrm: 750, 255 E. Temple St., LA
   Hon. Charles F. Eick

   [Filed concurrently with Notice of
   Motion and Motion; Request for
   Judicial Notice; [Proposed] Order]

25
26
27
28

1

# **TABLE OF CONTENTS**

I.   INTRODUCTION AND ALLEGED FACTS..................................................1

II.  LEGAL STANDARDS ............................................................................. 2

III. ARGUMENT........................................................................................ 4

A. PLAINTIFF CANNOT SUSTAIN A CIVIL RIGHTS 42 U.S.C. SECTION
   1983 CLAIM AGAINST ANY DEFENDANT WITHOUT DEPRIVATION OF
   HIS *FIRST AMENDMENT* RIGHTS ........................................................ 4

   1. There is No *First Amendment* Deprivation Arising from Plaintiff's Arrest
      for a Criminal Threat and Hate Crime ..................................... 4

   a) Plaintiff Made a True Threat of Violence ............................. 4

   b) Detectives had Probable Cause to Arrest Plaintiff for Criminal Threat
      under Penal Code Section 422.......................................... 8

   2. There is No *First Amendment* Deprivation Arising from the Workplace
      Violence Restraining Order of the Superior Court ................................10

   3. There is No *First Amendment* Deprivation Arising from the City's
      Rules of Decorum ..........................................................................11

B. PLAINTIFF FAILS TO ALLEGE A *FOURTH AMENDMENT* DEPRIVATION
   OF FALSE ARREST OR EXCESSIVE FORCE TO SUSTAIN A SECTION
   1983 CLAIM ................................................................................ 13

   1. No Excessive Force *Fourth* Amendment Violation Without Injury ..........13

   2. No False Arrest *Fourth* Amendment Violation – Probable Cause .............14

C. PLAINTIFF FAILS TO ALLEGE A *FIFTH OR EIGHTH AMENDMENT
   VIOLATIONS* OF DUE PROCESS OR CRUEL AND UNUSUAL
   PUNISHMENT TO SUSTAIN A SECTIN 1983 CLAIM ............................ 15

D. PLAINTIFF FAILS TO PLEAD ANY *FOURTEENTH AMENDMENT*
   VIOLATION FOR HIS SECTION 1983 CLAIM ....................................... 16

E. PLAINTIFF FAILS TO PLEAD A CLAIM FOR VIOLATION OF *ARTICLE
   I, SECTION 2 OF THE CALIFORNIA CONSTITUTION* AND NO MONEY
   DAMAGES ARE AVAILABLE................................................................ 16

i

1. No Free Speech Clause Violation Without *First Amendment* Violation .....16

2. No Money Damages for Violation of the Free Speech Clause .................17

F. PLAINTIFF FAILS TO PLEAD A *SECTION 1983* OFFICIAL CAPACITY CLAIM OR *MONELL* CLAIM AGAINST THE CITY ............................... 17

1. A *42 U.S.C. Section 1983* Claim Against Defendants in their Official Capacity Fails Without a Constitutional Violation ...................................17

2. No *Monell* Claim Exists Against Defendant City of Los Angeles, a Public Entity Without an Official Policy of Discrimination ...............................18

G. PLAINTIFF'S ALLEGED UNSUPPORTED THIRD THROUGH SIXTH CLAIMS FOR RELEF DO NOT STATE ANY CAUSE OF ACTION AND SHOULD BE DISMISSED FOR FAILING TO COMPLY WITH RULE 8 OF FRCP ................................................................................................... 19

1. Third Claim for Relief – Fabrications ....................................................19

2. Fourth Claim for Relief – Bane Act Cal. Civ. Code §52.1 ......................19

3. Fifth Claim for Relief – Malicious Prosecution  .................................19

4. Sixth Claim for Relief – False Imprisonment, Attempted Extortion, Malicious Interference with Business Relations, Harassment, Retaliation, Theft and Anti-Slapp ..........................................................................20

H. PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES ................... 20

IV. ARGUMENT IN SUPPORT OF MOTION TO STRIKE.....................................21

V. CONCLUSION  ........................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. City of Costa Mesa*,
    718 F.3d 800 (9th Cir. 2013) ........................................................ 14

*Arpin v. Santa Clara Valley Transp. Agency*,
    261 F.3d 912 (9th Cir. 2001) ........................................................ 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................. 3, 9

*Baker v. McCollan*,
    443 U.S. 137 (1979) ..................................................................... 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................. 3, 9

*Bell v. Wolfish*,
    441 U.S. 520 (1979) ................................................................... 15

*Branch v. Tunnell*,
    14 F.3d 449 (9th Cir. 1994) ........................................................... 3

*Burchett v. City of Newport Beach*,
    33 Cal.App.4th 1472 (1995) ......................................................... 21

*Cabrera v. City of Huntington Park*,
    159 F.3d 374 (9th Cir. 1998) ........................................................ 14

*Carey v. Piphus*,
    435 U.S. 247 (1978) ................................................................... 18

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995) ................................................................... 11

*City of Los Angeles v. Heller*,
    475 U.S. 796 (1986) ......................................................... 4, 18, 19

*Colony Cove Properties, LLC v. City of Carson*,
   640 F.3d 948 (9th Cir. 2011) ........................................................... 3

*Degrassi v. Cook*
   (2002) 29 Cal.4th 333 .................................................................. 17

*Erickson v. Pardus*,
   551 U.S. 89 (2007) ......................................................................... 3

*Fantasy, Inc. v. Fogerty*,
   984 F.2d 1524 (9th Cir. 1993) (overruled on other grounds in
   *Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994).) ........................... 22

*Gibson v. United States*,
   781 F.2d 1334 (9th Cir. 1986) ......................................................... 9

*Haygood v. Younger*,
   769 F.2d 1350 (9th Cir. 1985) (en banc) ......................................... 4

*Jackson v. City of Bremerton*,
   268 F.3d 646 (9th Cir. 2001) ......................................................... 14

*Kay v. Ehrler*,
   *499 U.S. 432 (1991)* .................................................................... 25

*Kindt v. Santa Monica Rent Control Bd*.,
   67 F.3d 266 (9th Cir. 1995) ........................................................... 12

*Los Angeles Alliance for Survival v. City of Los Angeles*,
   22 Cal.4th 352 (2000) .................................................................. 17

*Michael Hunt v. City of Los Angeles*,
   2012 U.S. Dist. LEXIS 191441 (December 6, 2012) .................... 13, 24

*Monell v. Dep't of Social Servs. of City of N.Y.*
   436 U.S. 658 (1978) ................................................................ ii, 18

*Newport v. Fact Concerts*,
   453 U.S. 247 (1981) ..................................................................... 21

*Newsome v. EEOC*,
   301 F.3d 227 (5th Cir. 2002) ........................................................... 3

iv

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(f)**

*Nunez v. City of Los Angeles,*
   147 F.3d 867 (9th Cir. 1998).......................................................................... 16

*Parratt v. Taylor,*
   451 U.S. 527 (1981), *overruled on other grounds by Daniels v.*
   *Williams,* 474 U.S. 327 (1986) ....................................................................... 4

*R. A. V. v. City of St. Paul,*
   *505 U.S. 377 (1992)*.................................................................................. 5, 13

*Rein v. Providian Fin. Corp.,*
   270 F.3d 895 (9th Cir. 2001) ......................................................................... 10

*Sloman v. Tadlock,*
   21 F.3d 1462 (9th Cir. 1994) ........................................................................... 9

*Smith v. Wade,*
   461 U.S. 30 (1983) ......................................................................................... 21

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001) ........................................................................... 3

*Terry v. Ohio,*
   392 U.S. 1 (1968) ........................................................................................... 14

*United States v. Koon,*
   34 F.3d 1416 (9th Cir. 1994) ......................................................................... 19

*United States v. Lopez,*
   482 F.3d 1067 (9th Cir. 2007) ......................................................................... 8

*Vinatieri v. Mosley,*
   787 F. Supp.2d 1022 (N.D. Cal. 2011) ........................................................... 9

*Virginia v. Black,*
   538 U.S. 343 (2003).................................................................................... 5, 7

*Watts* v. *United States,*
   394 U.S. 705 (1969) *(per curiam)* ............................................................. 5, 8

*West v. Atkins,*
   487 U.S. 42 (1988) ......................................................................................... 4

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(f)**

*White v. City of Norwalk,*
   900 F.2nd 1421, 1424-26 (9th Cir.1990) ....................................................12, 13

**Statutes**

42 U.S.C. Section 1983 .......................................................................... passim

Bane Act Cal. Civ. Code §52.1 ................................................................ 2, 19

California Civil Code § 3294 ...................................................................... 21

Government Code § 821.6 .......................................................................... 20

Penal Code section 422 (a) ....................................................................... 1, 8


**Other Authorities**

U.S. Const., First Amendment ............................................................ *passim*

U.S. Const., Fourth Amendment ....................................................13, 14, 15

U.S. Const., Fifth Amendment .................................................................. 16

U.S. Const., Eightth Amendment ............................................................. 15

U.S. Const., Fourteen Amendment .......................................................... 16

Article I, Section 2 of the California Constitution .....................................2, 16, 17

Federal Rule of Civil Procedure 12(b)(6) ................................................... 2

Federal Rules of Civil Procedure 12 (f).................................................1, 3, 6, 21

FRCP, Rule 8 subd. (a)(2).......................................................................19, 20

Moore's Federal Practice § 12.37 [3] .......................................................... 22

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO
STRIKE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(f)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND ALLEGED FACTS

Plaintiff files this sequel to the case he filed against the City of Los Angeles and various officials that is currently pending before this Court. (USDC, Case No. 2:16-cv-05655-JLS-E)  Plaintiff asserts the City and four new actors, City officials and employees, have again violated the very same primary rights stemming from his constant participation in public meetings. Plaintiff was arrested on May 13, 2016, for making a criminal threat and hate crime in violation of California Penal Code section 422, a Threat Crime, against the Defendant Herman J. Wesson, Jr. President of the City Council. (Complaint, p. 1, ll. 18-22.) Probable cause for the arrest was Plaintiff's intimidating true threat message to Defendant Wesson, an African American, of a person hanging from a tree, a burning cross, a Ku Klux Klan ("KKK") hooded figure waiving a noose in one hand and in the other, a sign saying "Wesson = Nigger" and "FUCK YOU HERB" in large capital letters, (Complaint, Exhibit D, p. 56, ll. 4-17; Exhibit G, pp. 72-73; Request for Judicial Notice ("RJN"), Exhibit B.) Subsequently, the Hon. Carol Boas Goodson, Judge of the California Superior Court, deemed the message a racially motivated threat issuing a Workplace Restraining Order against Plaintiff. (Complaint, Exhibit D, p. 46-64.)

The Los Angeles District Attorney chose not to prosecute, as is their prerogative, but this does not lessen Plaintiff's hateful message. (Complaint, Exhibit, C.) The *First Amendment* will not shield Plaintiff. As discussed in detail below, Plaintiff's true threat is an unprotected message of incitement. As in his previous lawsuit, Plaintiff alleges the same baseless constitutional challenges to his arrest and the same prior restraint challenge to the City's use of its "Rules of Decorum" ("Rules"). (Complaint pp.13-17.)  These Rules have passed constitutional muster as discussed below. As a licensed attorney in California, Plaintiff should know that the Rules are content neutral, time, place and manner

restrictions for the orderly conduct of City business and that his incendiary, racially motivated threats directed to Defendant Wesson are not protected by the *First Amendment*. Equally important, the collateral attack doctrine prohibits Plaintiff's challenge in this Court to the Restraining Order issued by the Superior Court.

Yet Plaintiff shamefully turns the facts on their head and attempts to use this Court and the *First Amendment* as a shield for his misconduct and uses this lawsuit as a vehicle to further harass and intimidate the very Defendant the State Court has ordered him to stay away from. (*Id.*) Plaintiff alleges federal and state constitutional violations of the *First, Second, Fourth, Fifth, Eighth and Fourteenth Amendments* pursuant to *42 U.S.C. Section 1983* ("*Section 1983*") and *Article I, Section 2 of the California Constitution*; deprivations that patently do not exist to support a *Section 1983* claim. Plaintiff imagines "smoking guns" from clerical errors and wild "conspiracies" at high levels against him by "the largest lobbying firm in LA. City" none of which are named as parties, without any factual support. (Complaint, p. 17, ll. 17-22; Exhibit I; p.19, ll. 11-28.) Plaintiff also alleges a litany of claims without a short, plain statement of why he is entitled to relief: *Fabrications, Bane Act (California Civil Code § 52.1), Malicious Prosecution, False Imprisonment, Attempted Extortion, Malicious interference with Business Relations, Harassment, Retaliation, theft, and Anti – Slapp.* (Complaint, p. 25, ll. 3-25.). In another rambling, duplicative Complaint, Plaintiff is guided by his anger that the threat he made resulted in serious consequences, but not because he has any valid claims, making this another sham Complaint.

Accordingly, Plaintiff's claims are implausible and the entire Complaint fails to state a claim upon which relief can be granted as to any Defendant, and Defendants respectfully request the Court dismiss the Complaint with prejudice.

## II. LEGAL STANDARDS

*Federal Rule of Civil Procedure 12(b)(6)* allows an attack on the pleadings for failure to state a claim upon which relief can be granted. "[W]hen ruling on a

defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94, (2007). However, allegations contradicted by matters properly subject to judicial notice or by exhibit need not be accepted as true. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). The Court also need not "accord an assumption of truthfulness to legal conclusions that are not supported by factual allegations in the Complaint or that are contradicted by documents referred to in the Complaint." *Colony Cove Properties, LLC v. City of Carson,* 640 F.3d 948, 957 (9th Cir. 2011) (citing *Ashcroft v. Iqbal* ("*Iqbal*"), 556 U.S. 662, 678 (2009); *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003)). Also, on motion to dismiss, a court may consider documents whose contents are alleged in a complaint and whose authenticity is not questioned, but not physically attached to the complaint. *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir. 1994).

To provide adequate notice to a defendant, a complaint must contain sufficient factual content to raise a right to relief above a speculative level. *Bell Atl. Corp. v. Twombly* ("*Twombly*"), 550 U.S. 544, 555 (2007). Further, the plaintiff must plead more than bare unsupported conclusions, and state a plausible claim for relief to survive a motion to dismiss. *Iqbal*, *supra*, at p. 679.

Plaintiff's misunderstanding of the law if attributable to his *pro se* status, does not permit him to proceed with plainly invalid claims. *See, e.g.*, *Newsome v. EEOC*, 301 F.3d 227, 229 (5th Cir. 2002) (affirming District Court's Rule 12(b) (6) dismissal of a *pro se* plaintiff's claims against the EEOC). Plaintiff is an attorney in good standing with the Cal. State Bar entrusted with legal knowledge.

*Federal Rule of Civil Procedure 12(f)* states that the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of a Rule 12(f) motion "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." (*Sidney-Vinstein v.A.H. Robins Co.*,

697 F.2d 880, 885 (9th Cir. 1983).)

## III.  ARGUMENT

## A.  PLAINTIFF CANNOT SUSTAIN A CIVIL RIGHTS *42 U.S.C. SECTION 1983* CLAIM AGAINST ANY DEFENDANT WITHOUT DEPRIVATION OF HIS *FIRST AMENDMENT* RIGHTS

*Section 1983* "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). It imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

Without conceding any alleged misconduct, City officials and employees acted in their official capacities when performing daily tasks as public employees and elected officials. "[G]enerally, a public employee acts under color of state law while acting in his [or her] official capacity or while exercising his [or her] responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988).

Thus, Plaintiff's *Section 1983* claim turns on the second inquiry, namely, whether Defendants deprived Plaintiff "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. (42 U.S.C. § 1983.) A municipality may not be held liable under *Section 1983* where no injury or constitutional violation has occurred. *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) (holding if a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is beside the point.)

### 1.  There is No *First Amendment* Deprivation Arising from Plaintiff's Arrest for a Criminal Threat and Hate Crime

#### a)  Plaintiff Made a True Threat of Violence

4

1   Plaintiff alleges that all Defendants violated his *First Amendment* rights
2   because he was arrested for making a criminal threat against Defendant Wesson,
3   simply because he made the threat loosely within the context of a public meeting.
4   (Complaint, p.11, ll. 4-14.) This is the cornerstone upon which Plaintiff builds his
5   Complaint. The threatening message, however, is unprotected speech and thus, the
6   entire Complaint crumbles.

7   The *First Amendment* permits a State to ban a "true threat." *Watts* v. *United*
8   *States,* 394 U.S. 705 (1969) *(per curiam)*; accord, *R. A. V. v. City of St. Paul*, *505*
9   *U.S. 377,* 388 (1992) ("Threats of violence are outside the *First Amendment*".)
10  "True threats" encompass those statements where the speaker means to
11  communicate a serious expression of an intent to commit an act of unlawful
12  violence to a particular individual or group of individuals. See *Watts* v. *United*
13  *States*, *supra*, 394 U.S. 705 at p. 708. The speaker need not actually intend to carry
14  out the threat. Rather, a prohibition on true threats "protects individuals from the
15  fear of violence" and "from the disruption that fear engenders." *R. A. V. v. City of*
16  *St. Paul*, *supra*, 505 U.S. 377, at p. 388. "*Intimidation* in the constitutionally
17  proscribable sense of the word is a type of *true threat*, where a speaker directs a
18  threat to a person or group of persons with the intent of placing the victim in fear
19  of bodily harm or death." *Virginia v. Black*, 538 U.S. 343, 359-60 (2003)
20  (emphasis added).

21  On May 11, 2016, Plaintiff submitted a "comment card" to speak at the
22  City's Elections, Intergovernmental Relations and Neighborhoods Committee
23  Meeting on agenda item No. 1, a Department of Water and Power ("DWP")
24  proposal. (Complaint, p. 9, ll. 9-11.) The meeting was chaired by President of the
25  City Council, Defendant Wesson. Plaintiff identified himself on the card as
26  "Wayne from Encino" and made racially motivated depictions of a hooded figure,
27  presumably of himself in his usual KKK garb that he wears to meetings. A figure
28  is hanging from a tree and a cross is burning. The figure is presumably Defendant

Wesson (who is African American). The hooded figure is in running motion and caries a sign in one hand that says, "Wesson = Nigger" and the other hand waives a noose.  On the back of the card Plaintiff wrote in bold block letters, "FUCK YOU HERB." (Complaint, Exhibit G, pp. 72-73; RJN, Exhibit B.) Plaintiff submitted the threatening card knowing it would be delivered directly to Defendant Wesson as the committee chair calls up public speakers. Plaintiff's target is undisputed. Plaintiff's message of intimidation and threat of harm, is undeniable. Notwithstanding the very real threat, Plaintiff concedes he was not denied his right to speak and he made his public comments at the May 11, 2016 meeting. (Complaint, p. 9, ll. 12-13; see also Complaint Exhibit H, pp. 74-75, Declaration under penalty of perjury of Herman J. Wesson, ¶ 7.)

Plaintiff's racial animus against Defendant Wesson is palpable, both in the comment card and in the improper Complaint allegations impugning Defendant Wesson's ethics and integrity with allegations not material to any cause of action. (Complaint, pp. 18, ll. 2-21; Exhibit H, pp.74-79.)[1] Yet, Plaintiff alleges the following contrived and tortured explanation of his threatening message, which even if accepted a true, is not only implausible, it is contradicted by the transcript of the Superior Court at the hearing on the Restraining Order. (Complaint, Exhibit D, pp. 56-57.):

> … Plaintiff's speaker card which contained writings showing a cartoon and comments about Mr. Wesson that said he was equal to a 'Nigger' and that said on the opposite side the words 'F-U-Herb.' The cartoon shows a tree and a person hanging from it on the front, an item looking like a cross burning, and a hooded cartoon with cute little feet, and a tongue stuck out carrying what is a small sign that reads 'Herb = Nigger.' … Mr. Wesson has been called a 'Nigger' many many times by black people mostly and also by other folks, and that he is called a 'Nigger' because he is a 'sell-out' of his constituency and his City and thus acts like a 'Nigger' as best described by rap artists such as "N.W.A.", N.A.S.," and

---

[1] Below, Defendant moves to strike from the Complaint "redundant, immaterial, impertinent, or scandalous matter." *Federal Rule of Civil Procedure 12(f).*

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(f)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ice-T.  This is the opinion of these public speakers.  As well, the City of Los Angeles had a water conservation program featuring a blue water drop with eyes, feet, and face and resembled a hooded figure like a funny KKK caricature.  Plaintiff thus seeing the D.W.P. as "lynching" the rate payers … sees the City Hall itself as a hooded figure coming always to "lynch" the rate-payers for more and more money, and hanging the rate-payers with these obscene costs.  The City itself is being destroyed by corruption, as if it is a burning cross on a hill. The cartoon was a doodle scribbled …

(Complaint p. 9, ll. 21-27; p. 10, ll. 1-22.)

Plaintiff cannot sanitize or erase history with terminology such as "hooded cartoon with cute little feet" or "funny caricature" or "doodle". (*Id.*) Few symbols carry such a clear and terrifying message as the sight of a burning cross. For most of the past century, the Ku Klux Klan in particular, has used the flaming cross both as a symbol of white supremacy and as a terror tactic of communicating threats and intimidation aimed primarily at African-Americans who were hanged from trees throughout the south. *Virginia v. Black*, 538 U.S. 343, at p. 548-49. The imagery is intimidating and the long history of Klan violence shows the possibility of injury is not hypothetical. *Id.,* at pp. 550-52. Plaintiff was aware of the fear this core imagery invokes notwithstanding his disingenuous attempt to cleanse it.

Plaintiff himself wears a white hood emblazoned with a red swastika to the many City meetings he attends as he concedes in the Complaint. "Wearing a hood and drawing KKK like drawings and swastikas and the like on Speaker cards are expressions of Plaintiffs political message protected by the First Amendment in protest over the suppression of free speech, in general and the oppression of Plaintiff as a White American by Afro-American and Jewish American City Officials." (Complaint, p. 12, ll.7-19.) It is not a leap to recognize that the hooded figure chasing down Defendant Wesson with a noose in his hand is Plaintiff, not a DWP water drop. Plaintiff believes himself to be an oppressed white male at the hands of an African-American City Official. (Complaint, p.12, ll.12-13.) Truthfully, Plaintiff is not a rap artist, he uses of the word "Nigger" pejoratively

7

and the epithet is considered an abusive slur when used by a white person against an African-American. Plaintiff sprinted across the constitutional line with racist intimidation to make Defendant Wesson fearful of his safety and his "true threat" has no *First Amendment* protection. See *Watts* v. *United States*, *supra*, 394 U.S. 705 at p. 708. (Complaint, Exhibit H, p. 75, ¶8-11, Decl. of Herman Wesson.)

  **b)** **Detectives had Probable Cause to Arrest Plaintiff for Criminal Threat under Penal Code Section 422**

  "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (defining probable cause and explaining that it is an objective standard). Plaintiff's true threat message of violence in conjunction with a two-day investigation in their specialized area of threat management, led the arresting detectives (Defendants Reade and Nava-Mercado) of the Threat Management Unit ("TMU") of the Los Angeles Police Department, to the reasonable conclusion that Plaintiff was in violation of Penal Code section 422 (a) Criminal Threats. (Complaint, p. 11, ll.10-11.; Exhibit B, pp. 39-40.)[2]  On May 13, 2016, two days after making the threat, Plaintiff was taken into custody, bail was set and he was released the same

---

[2] California Penal Code section 422 states, " (a) Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison. …"

day. (Complaint, p.11, ll. 4-14; Exhibit B, pp.39-40.)

With respect to Defendants Detectives Reade and Nava-Mercado, Plaintiff pleads no facts other than these Defendants are the arresting detectives and that because of the arrest, he missed two important meetings (*Id.*) In order to demonstrate a *First Amendment* violation, a plaintiff must show that "by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994). "[A] plaintiff may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives…" *Vinatieri v. Mosley*, 787 F. Supp.2d 1022, 1033 (N.D. Cal. 2011); see also, *Gibson v. United States,* 781 F.2d 1334, 1388 (9th Cir. 1986).

The arrest was not motivated by the Defendants' intent to silence Plaintiff. Defendants Reade and Nava-Mercado are threat management experts and Plaintiff concedes that Defendant Reade is "head of the elite 'T.M.U.' or 'Threat Management Unit.' Detective Reade's duties and activities of the 'T.M.U.'…. involve[e] the elimination of any 'threat' against highly placed entertainers, lawyers, lobbyists and City employees." (Complaint, p. 3, ll. 4-10.) Defendants Reade and Nava-Mercado had legitimate law enforcement objectives to protect a victim of a criminal threat and hate crime and reasonably and objectively determined probable cause existed to arrest Plaintiff for making Defendant Wesson fearful for his personal safety, as has been confirmed by the issuance of a restraining order. (Complaint, Exhibit D, pp. 46-51.)

It is not enough for Plaintiff simply to aver that there was a "speculative chill" to his rights to speak at public meetings, especially when his own conduct led to the arrest. (Complaint, p. 13, ll.14.) *Id.* Plaintiff's *First Amendment* claims against Defendants are not plausible; do not factually support a constitutional deprivation, and do not need to be accepted as true under *Twombly* and *Iqbal*.

9

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(f)**

## 2.    There is No *First Amendment* Deprivation Arising from the Workplace Violence Restraining Order of the Superior Court.

Defendant Wesson feared for his safety and City Attorney, Defendant Hugo Rossitter, sought a Workplace Violence Restraining Order on his behalf. (Complaint, Exhibit D, pp. 46-61) The Restraining Order was issued by Superior Court Judge Carol Boas Goodson, on June 10, 2016. (*Id.*)

The Court was not persuaded by Plaintiff's explanation for the images on his message to Defendant Wesson. The very same alleged implausible explanation that Plaintiff offers here - that his writing was a way of saying the Department of Water and Power was "lynching the ratepayers." The Court's inquiry was, "What does the Ku Klux Klan and a person hanging from a noose and saying 'Fuck you Herb' have to do with it?" (Complaint, Exhibit D, p.57. ll. 3-8.) The Court stated, "you [Mr. Spindler] have freedom of speech and you have freedom to go to the council meetings, but you have to behave in a manner that does not cross the line into threats."(Complaint, Exhibit D, p. 58, ll.3-6.) Further, the Court stated, "It was clearly a hate message. …I'm not gagging you … I am going to allow you to [go to] the Council Meetings … I just need you to really stay away from Mr. Wes[s]on." The Court found Plaintiff's writing was a threatening hate message to Defendant Wesson. (Complaint, Exhibit D, p. 59, ll. 13-24.) Plaintiff's *First Amendment* Rights were not violated by the Order and no restrictions on Plaintiff's speech was ordered.

The collateral attack doctrine precludes Plaintiff from asking this Court to review Judge Goodson's Order. "The collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts." *Rein v. Providian Fin. Corp.,* 270 F.3d 895, 902 (9th Cir. 2001) (citing *Celotex Corp. v. Edwards,* 514 U.S. 300, 313 (1995).). The United States Supreme Court made clear: [I]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher

1    court, its orders based on its discretion are to be respected. *Celotex, supra,* 514

2    U.S. 300 at p. 313 (quoting *Walker v. Birmingham,* 388 U.S. 307, 314 (1967)

3    (quotations omitted)

4         The proper mechanism for review of Judge Goodson's Order is an appeal to

5    the California Court of Appeal. As Plaintiff alleges he has given notice of an

6    appeal, this Court should not disturb the Order. (Complaint, Exhibit D, p. 62.)

7         Plaintiff tortures clerical errors into an allegation of, "THE APRIL 2016

8    SMOKING GUN." (Complaint p. 17, ll. 18.) Defendant Rossiter's declaration in

9    support of the Restraining Order petition had the incorrect date on the signature

10   line of April, 27, 2016, he also says, the message was delivered at a "City Council"

11   meeting instead of a "City Council Committee Meeting". (Complaint, Exhibit I.)

12   These are typographical and/or clerical errors, nothing more. Plaintiff's hyperbole

13   of a smoking gun exemplifies his conspiratorial stretch of the imagination, seeking

14   any fact to allege against Defendant Rossiter, demonstrating a personal animus

15   against him. Further, if Plaintiff considered these errors to nullify the petition for

16   the Restraining Order, he had the opportunity to raise it at the hearing, and he did

17   not. (Complaint, Exhibit, D, pp. 53-61.) Plaintiff concedes Defendant Rossiter's

18   expertise in assessing violent treats: "in his official capacity … Mr. Rossiter's

19   duties are as an employment attorney and specialist in 'threat management.'"

20   (Complaint, p. 2, ll. 26-27; p. 3, l. 1.)

21        Plaintiff alleges no facts to sustain a *First Amendment* deprivation by any

22   Defendant from the issuance of the Workplace Restraining Order.

23        **3.    There is No *First Amendment* Deprivation Arising from the
              City's Rules of Decorum**

24

25        As in his prior Complaint, and with identical language, Plaintiff alleges that

26   the City's "Rules of Decorum and their enforcement violate the *First Amendment*

27   because they contain provisions which constitute impermissible prior restraints on

28   speech." (Complaint pp.13-17.) Plaintiff's factual allegations are conclusory,

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION
TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO
STRIKE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(f)**

bereft of relevant facts, repetitive, often unintelligible and largely cut and pasted from his prior Complaint and another lawsuit filed by another Plaintiff.[3]

Citizens are not entitled to exercise their First Amendment rights whenever and wherever they wish. *See Kindt v. Santa Monica Rent Control Bd*., 67 F.3d 266, 269 (9th Cir. 1995), citing *Adderley v. Florida*, 385 U.S. 39, 47-48 (1966) (trespass statute that prohibits demonstrating on jailhouse grounds does not violate the *First Amendment*). In the context of the "highly structured nature of city council and city board meetings … limitations on speech at those meetings must be reasonable and viewpoint neutral, but that is all they need to be." *Kindt v. Santa Monica Rent Control Bd*., *supra,* 67 F.3d 266, at p. 270-71; see also, *White v. City of Norwalk* "*City of Norwalk",* 900 F.2d 1421, 1424-26 (9th Cir. 1990) (upholding ejection of a disruptive citizen from a city council meeting under nearly identical decorum regulations[as in *Kindt*] and pointing out that a great deal of discretion must be left to the entity).

It is well established that for government entities to carry out public business expeditiously and in orderly fashion, content-neutral Rules of Decorum are reasonable time, place and manner restrictions of speech as long as narrowly constructed to remove speakers only upon actual disruption. *City of Norwalk, supra,* 900 F.2d 1421, at p. 1426. The Rules of Decorum of the Rules of the Los Angeles City Council are thus narrowly constructed. No members of the public addressing the Council or Committee "shall engage in any conduct which disrupts the orderly conduct of any Council or Committee meeting." Also, no person in the audience shall engage in "conduct that disrupts the orderly conduct of any Council or Committee meeting" such as, "the utterance of loud, threatening or abusive language, whistling, clapping, stamping of the feet, repeated waiving of arms or other disruptive acts." (RJN, Exhibit A, pp. 11-13; City Council Rules, Rules of Decorum, pp. 3-5 ¶12 (a)(b).) The City's narrow construction of its Rules of

---

[3] See *fn*. 4

Decorum requiring actual disruption is content neutral and facially constitutional. *Id.*; see also, *Michael Hunt v. City of Los Angeles*, ("*Hunt*") 2012 U.S. Dist. LEXIS 191441 *15-16 (December 6, 2012) (The Court ruled that the City's Recreation and Park Commission's Rules of Decorum (substantively the same and modeled after the Rules at issue here) were facially constitutional and that the *City of Norwalk* was dispositive. When disruption of the meeting is required before attendees can be removed from a public meeting, this is a narrow construction that is plainly constitutional.)[4]  Plaintiff asserts an as-applied challenge to the Rules, alleging he did not create a disruption as required by the Rules. (RJN, Exhibit A, pp. 11-13, Exhibit A; Rules of Decorum, pp. 3-5 ¶12 (a) (b).)  But when Plaintiff handed the threat of violence to Defendant Wesson a disruption of fear and intimidation occurred that could not be corrected by a mere warning to stop. *See R.A.V. v. City of St. Paul, supra,* 505 U.S. 377, at p. 388. Despite his outrageous conduct, Plaintiff was not restrained and he made his public comments. (Complaint, Exhibit H, p. 74-75.)

Accordingly, Plaintiff's *Section 1983* claim based on a *First Amendment* deprivation for use of the Rules of Decorum, the arrest, or the restraining order, all fail. Defendants' Motion to Dismiss should be granted without leave to amend.

**B.    PLAINTIFF FAILS TO ALLEGE A *FOURTH AMENDMENT* DEPRIVATION OF FALSE ARREST OR EXCESSIVE FORCE TO SUSTAIN A SECTION 1983 CLAIM**

**1. No Excessive Force *Fourth Amendment* Violation Without Injury**

The *Fourth Amendment* protects against unreasonable searches and

---

[4] On 12 (b) (6) motion, the Court in *Hunt* dismissed, the facial challenge to the Rules of Decorum in the "Second Claim for Relief" of the *Hunt* Complaint. The very same "Second Claim for Relief" that Plaintiff here cut-and-paste into his first case (USDC, Case No. 2:16-cv-05655-JLS-E), and the same repetitive, rambling language Plaintiff has cut and pasted into the instant Complaint. (Complaint, pp.13 -17; p. 23, l.1.) Including using Defendant Sanders, who was the Defendant in the *Hunt* litigation. (Complaint, p.25, l.1.) *Michael Hunt v. City of Los Angeles*, ("*Hunt*") 2012 U.S. Dist. LEXIS 191441 *15-16 (December 6, 2012)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(f)**

seizures. *U.S. Const., 4th Amendment*; *Terry v. Ohio*, 392 U.S. 1 (1968). When effecting an arrest, the *Fourth Amendment* requires that officers use only such force as is "objectively reasonable" under the circumstances. *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001); *Acosta v. City of Costa Mesa*, 718 F.3d 800, 826 (9th Cir. 2013).

Plaintiff alleges that, "… the LAPD had 6 or more officers surround Plaintiff and Detective Reade and Nava-Mercado took Plaintiff directly to the Metropolitan Detention Center … booked him … set bond of $75,000 … 8 ½ hours later – PLAINTIFF HAD TO POST BOND AND WAS FINALL[sic] RELEASED." (Complaint, p. 11, ll.4-14.) Plaintiff pleads only the conclusory allegation that "the detention for false arrest on May 13, 2016 was excessive force." (Complaint, p. 12, ll. 25-27.)

Detectives had a right to touch Plaintiff incident to his arrest yet glaringly absent from the Complaint are *any* allegations of physical injuries sustained by Plaintiff at the hands of the Defendant Detectives.  A plaintiff with only allegations of de minimis injury cannot establish an excessive force claim, *see Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 922 (9th Cir. 2001), much less Plaintiff here who cannot make any injury allegations whatsoever because none were sustained.

## 2.     No False Arrest *Fourth Amendment* Violation - Probable Cause.

To the extent Plaintiff seeks to claim false arrest under *42. U.S.C. Section 1983*, Plaintiff must demonstrate that there was no probable cause to arrest him. See *Cabrera v. City of Huntington Park,* 159 F.3d 374, 380 (9th Cir. 1998) ("To prevail on his § 1983 claim for false arrest ..., [plaintiff] would have to demonstrate that there was no probable cause to arrest him."). As discussed above, the allegations in the Complaint demonstrate probable cause arising from the racially motivated criminal threat Plaintiff delivered to Defendant Wesson at the May 11, 2016 meeting. (See Complaint, Exhibit G, pp.72-73; RJN, Exhibit B.)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(f)**

Plaintiff's conclusory allegation that Defendants "have improperly interpreted and applied Section PC 422 (A) in an illegal manner to suppress and violate Plaintiff's civil rights" need not be accepted as true. (Complaint, p. 21, ll.22-23.)

Plaintiff cannot establish a false arrest claim, and his bare conclusory allegations of excessive force need not be accepted as true nor is it probable that the arrest itself is excessive force as Plaintiff alleges. Plaintiff fails to state any *Fourth Amendment* claim against any Defendant.

## C. PLAINTIFF FAILS TO ALLEGE *FIFTH OR EIGHTH AMENDMENT VIOLATIONS* OF DUE PROCESS OR CRUEL AND UNUSUAL PUNISHMENT TO SUSTAIN A SECTION 1983 CLAIM

In *Bell v. Wolfish,* 441 U.S. 520, 536-538 (1979), the United States Supreme Court explained: In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee … Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.

Plaintiff alleges a violation of due process and cruel and unusual punishment because after his arrest, "Detective Reade and Nava-Mercado took Plaintiff directly to the Metropolitan Detention Center … booked him … he was set bond of $75,000 … 8 ½ hours later – PLAINTIFF HAD TO POST BOND AND WAS FINALL[sic] RELEASED." (Complaint, p. 11, ll.4-14.) Ultimately, Plaintiff was not charged and convicted thus, no punishment was imposed for purposes of an *Eighth Amendment* challenge. *Id.* at p. 536. (Complaint, Exhibit C, pp. 41-42.) Nonetheless, assuming the allegations as true, Plaintiff's allegations do not rise to the level of a *Fifth* or *Eighth Amendment* Violation when he did not

even spend one night in custody, but was released in eight and one-half hours. Plaintiff fails to allege any due process or any constitutional deprivation by any Defendant during his arrest and detainment.

**D.   PLAINTIFF FAILS TO PLEAD ANY *FOURTEENTH AMENDMENT* VIOLATION FOR HIS SECTION 1983 CLAIM**

"The concept of 'substantive due process,' semantically awkward as it may be, forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) citing, *United States v. Salerno,* 481 U.S. 739, 746 (1987) (quoting, *Rochin v. California,* 342 U.S. 165, 172 (1952) (citations and internal quotation marks omitted.) Further, "There is no general liberty interest in being free from capricious government action." *Nunez, supra,* 147 F.3d 867, at 873.  Plaintiff's alleged discrimination or deprivation of protected liberty interests under the *Fourth* and *Fifth Amendment*, are subject to dismissal as explained above, not under a separate *Fourteenth Amendment* analysis.

Accordingly, Plaintiff makes no claim for which relief can be granted for any violation of his *Fourteenth Amendment* rights and these claims should be dismissed with prejudice.

**E.   PLAINTIFF FAILS TO PLEAD A CLAIM FOR VIOLATION OF *ARTICLE I, SECTION 2 OF THE CALIFORNIA CONSTITUTION* AND NO MONEY DAMAGES ARE AVAILABLE**

**1. No Free Speech Clause Violation Without *First Amendment* Violation**

The Rules of Decorum are facially valid under both the *First Amendment* to the *United States Constitution* and *Article I, Section 2 of the California Constitution* because they are content-neutral and reasonable time, place, manner restrictions. Also, neither Plaintiff's arrest, nor the Restraining Order, implicate *First Amendment* deprivations. *Article I, Section 2 of the California Constitution* ("the Free Speech Clause") provides that, "Every person may freely speak, write

16

and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." As such, the Free Speech Clause is worded more expansively than the *First Amendment*, however that does not mean that "it is broader than the First Amendment in all its applications." *Los Angeles Alliance for Survival v. City of Los Angeles*, 22 Cal.4th 352, 367 (2000). Indeed, the facial validity analysis is coextensive under both the *First Amendment* and the Free Speech Clause. See *Id.* at pp. 364-369.

Thus, the above analysis finding no *First Amendment* protection for Plaintiff's true threat of violence is fatal to Plaintiff's claim under the Free Speech provision of the California Constitution.

### 2.    No Money Damages for Violation of the Free Speech Clause

Further, Plaintiff's claims under the Free Speech Clause should be dismissed to the extent he seeks money damages. The Free Speech Clause does not give rise to claims for damages and therefore Plaintiff's state claims should be dismissed to the extent they seek damages of any kind.  In *Degrassi v. Cook* (2002) 29 Cal.4th 333, the Supreme Court of California ruled that there is no basis to recognize a constitutional tort action for damages for a violation of the Free Speech Clause. "We conclude that there is no indication in the language of [the Free Speech Clause] nor any evidence in the history of that provision, from which we may find, within that provision, an implied right to seek damages for a violation of the free speech right set out therein." *Id.* at p. 342. Therefore, Plaintiff's state claims under *Article I, Section 2, of the California Constitution* should be dismissed to the extent that he seeks any kind of monetary damages.

### F.    PLAINTIFF FAILS TO PLEAD A *SECTION 1983* OFFICIAL CAPACITY CLAIM OR *MONELL* CLAIM AGAINST THE CITY

### 1.    A *42 U.S.C. Section 1983* Claim Against Defendants in their Official Capacity Fails Without a Constitutional Violation

---

Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus,* 435 U.S. 247, 253 (1978) quoting *Imbler v. Pachtman,* 424 U.S. 409, 417 (1976). As discussed above, Plaintiff has failed to properly allege any constitutional violations for which relief can be granted. No *Section 1983* claim of any other discrimination is alleged in the Complaint except for Plaintiff's odd contention that he enjoys *Section 1983* protection because of "oppression of Plaintiff as a White American by Afro-American and Jewish American City officials in particular." (Complaint, p. 11, ll. 20-21.)

Accordingly, Plaintiff's Complaint against Defendants in their official capacity: Wesson, Rossitter, Reade and Nava-Mercado, should be dismissed on this ground as well.

2.     **No *Monell* Claim Exists Against Defendant City of Los Angeles, a Public Entity Without an Official Policy of Discrimination**

A municipality may not be held liable under *Section 1983* where no injury or constitutional violation has occurred. *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *Monell v. Dep't of Social Servs. of City of N.Y.* ("*Monell*") 436 U.S. 658, 691 (1978). On this foundational ground, Plaintiff's Complaint is insufficient.

Here, Plaintiff alleges that the use of Rules of Decorum, are the "policies and practices." (Complaint, p. 5, ll.11-12.) Certainly, the Rules are not an official City policy to deprive Plaintiff of any constitutional right. It is abundantly clear that Plaintiff does not want any Rules applied at any City meeting and to allow his unfettered speech, yet Plaintiff's dislike of the Rules cannot support a *Monell* claim. The Rules, therefore, cannot be the basis of any unconstitutional policy or practice and no other policy is alleged. Without an official policy of discrimination, there can be no municipal liability for the City and the Complaint in its entirety as to the City Defendant should be dismissed. *Monell*, *supra*, 436 U.S. 658, at p. 691.

## G. PLAINTIFF'S ALLEGED UNSUPPORTED THIRD THROUGH SIXTH CLAIMS FOR RELIEF DO NOT STATE ANY CAUSE OF ACTION AND SHOULD BE DISMISSED FOR FAILING TO COMPLY WITH RULE 8 OF FRCP.

Plaintiff suffered no constitutional deprivation to sustain a *Section 1983* claim against any Defendant. *42. U.S.C. § 1983*; *City of Los Angeles v. Heller*, *supra*, 475 U.S. 796 at p. 799. Plaintiff's own conduct of making a criminal threat against Defendant Wesson was the catalyst for his arrest and issuance of a Workplace Violence Restraining Order. Now, Plaintiff makes a confusing, unintelligible list of claims against all Defendants without a short plain statement of the claim showing that Plaintiff is entitled to any relief whatsoever. (FRCP, Rule 8 subd. (a)(2).) Moreover, as all these claims for relief are based on Plaintiff's conclusory allegations of unsupported constitutional violations and should be dismissed as failing to state a claim against any Defendant.

### 1.  Third Claim for Relief – Fabrications

Plaintiff alleges, "Failure to intervene in the unlawful detention and arrest by Defendants per *United States v. Koon*, 34 F.3d 1416 (9th Cir. 1994)" (Complaint, p. 25, ll.5-7.) Plaintiff's claim is confusing and the case of the officers who appealed their civil rights conviction and sentencing after the Rodney King arrest is not relevant or material to the circumstances of this case. Thus, this claim should be dismissed.

### 2. Fourth Claim for Relief – Bane Act Cal. Civ. Code §52.1

Plaintiff alleges, "City is vicariously liable for its acts of its employees as an employer." (Complaint, p. 25, l.13.) Plaintiff's allegation in reference to the Bane Act is unintelligible and this claim should be dismissed.

### 3. Fifth Claim for Relief – Malicious Prosecution

Plaintiff alleges Defendants made misrepresentations in the petition for the Restraining Order by "calling the lawful action of handing in a speaker card 'a criminal threat'" (Complaint, p. 25, ll.16-19.) The Superior Court, in fact, issued

the Restraining Order having examined Plaintiff's threating "comment card" (Complaint, Exhibit G, pp. 72-73; RJN Exhibit B.) and finding it to be a racially motivated threat as noted in the transcript of the hearing. (Complaint, Exhibit D, p.59, l. 13.) Plaintiff's own exhibits to the Complaint contradict this allegation. Moreover, Defendants are immune from malicious prosecution claims. *See* Gov. Code § 821.6.

### 4. Sixth Claim for Relief – False Imprisonment, Attempted Extortion, Malicious Interference with Business Relations, Harassment Retaliation, Theft and Anti-Slapp

Plaintiff combines seven different alleged claims under the sixth claim for relief with only a threadbare recitation of conclusory allegations and nonsensical facts to support these claims. By tautology, Plaintiff alleges "Defendants, detained, attempted to extort money and concessions of liberty, destroyed Plaintiff's reputation and his ability to conduct business relations, harassed, retaliated, and discriminated against Plaintiff." (Complaint, pp. 25, ll. 21-26; p. 26, ll. 1-2.) Merely repeating the claim is not a short plain statement of the claim showing that Plaintiff is entitled to relief and all should be dismissed. (FRCP, Rule 8 subd. (a)(2).)

## H.   PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES

Putting aside Plaintiff having no valid claims against any Defendant, Plaintiff is not entitled to punitive damages. Plaintiff does not plead any facts to establish that any of the Defendants acted with malice, oppression or fraud to justify an award of punitive damages. Instead, Plaintiff alleges on "information and belief" and in boilerplate language that all Defendants acted "with willful and intentional misconduct … with reckless or callous disregard, and with deliberate indifference for Plaintiff's constitutional rights, with an evil motive … with malice and oppression." (Complaint, p. 22, ll.26-27. p. 23, ll. 1-2; p. 24, ll. 21-28, p. 25, ll. 1-2.; Prayer, ¶ 6.) These naked allegations cannot support an award for punitive damages under state or federal law. A plaintiff may recover punitive

damages in an action under *Section 1983* where the defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Under state law, to sustain a punitive damages claim against the individual Defendants, Plaintiff must establish by clear and convincing evidence that each Defendant acted with oppression, fraud or malice. "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others. "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant to thereby deprive a person of property or legal rights or otherwise causing injury. *California Civil Code § 3294*. It is well established that pleading "constitutional buzz words" is not sufficient to show entitlement to punitive damages. See *Burchett v. City of Newport Beach,* 33 Cal.App.4th 1472, 1481 (1995) [the Court found pleading little else than the constitutional "buzz words" insufficient to state due process, equal protection, and property rights claims under Federal Civil Rights Act (42 U.S.C. § 1983) claims].

With respect to the City Defendant, the United States Supreme Court has held that a "municipality is immune from punitive damages under *42 U.S.C. § 1983*." *Newport v. Fact Concerts,* 453 U.S. 247, 271 (1981).

Plaintiff's conclusory pleading does not entitle him to recover punitive damages against any Defendant, and the City is immune as a matter of law; therefore, Plaintiff's improper pleading for punitive damages should be dismissed.

## IV.   ARGUMENT IN SUPPORT OF MOTION TO STRIKE

Pursuant to *Rule 12(f) of the Federal Rules of Civil Procedure*, a Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or

21

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(f)**

scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (overruled on other grounds in *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).

Even assuming that the Complaint contained well-pleaded causes of action, there are several allegations that are redundant, immaterial and scandalous. An immaterial matter "has no essential or important relationship to the claim for relief or the defenses being pleaded," while an "[i]mpertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1382, at 706-07, 711 (1990))

"'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Moore's Federal Practice* § 12.37 [3] (footnote omitted)

Defendants ask the Court to strike the following from the Complaint as either redundant, immaterial or impertinent or scandalous:

1.      Complaint, p. 5, ll. 16-18, as immaterial and scandalous. "Fabricating reports including perjured statements under oath,"

Plaintiff alleges no substantive facts to support these serious, conclusory allegations and they are made only to impugn the character of elected officials, LAPD Detectives and a Deputy City Attorney, whose ethics are integral to their professions. This allegation should be stricken.

2.      Complaint, p. 17, ll. 18-28; p. 18, l.1; Exhibit I, pp. 81-82, as immaterial and scandalous.

Starting at p. 17, l. 18 "THE APRIL 2016 SMOKING GUN…" and ending on p. 18, l.1, "…different on several sections." Plaintiff's allegations of Defendant

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND MOTION TO STRIKE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(f)**

1 | Rossiter's private and personal business, the status of his tax and business
2 | licenses, his salary as a City Attorney, and spurious news article, are not relevant
3 | to any constitutional claim and are made only to impugn the character of
4 | Defendant Rossiter and should be stricken as scandalous and immaterial.

5 |        3.      Complaint, p. 18, ll. 2-20, Exhibit H, pp.76-79, as scandalous and
6 | immaterial.

7 |       Plaintiff makes an outright attack on Defendant Wesson's personal
8 | finances. Starting with "DEFENDANT WESSON IN FINANCIAL DIRE
9 | STRAITS AND POSSIBLY MORE…" at p. 18, l.2 and ending with "… AND
10 | DEFAULTED ON BOTH!" at p. 18, l. 20.  Plaintiff alleges personal information
11 | on Defendant Wesson, such as tax liens, real estate defaults, voter fraud and
12 | perjury, and attaches illegible exhibits of personal materials, none of which are
13 | material to his constitutional claims and are so improper as to offend the Court.
14 | This mean-spirited pleading, spurred by Plaintiff's animus, is irrelevant, offensive
15 | and scandalous and should be stricken.

16 |        4.      Complaint, p. 19, ll. 11-28; p. 20, l.1, as impertinent and scandalous.
17 |       Starting at p. 19, l.12 "THE CONSPIRACY…" and ending on p. 20, l.1,
18 | "…as far back as June 2016!" Plaintiff spins wild conclusory, bare allegations
19 | against Defendants Rossitter and Wesson about a conspiracy with a prominent
20 | Los Angeles lobbying firm intimating bribes and back-door deals with individuals
21 | not named as parties in the Complaint nor relevant to any constitutional claim.
22 | This improper, shameful pleading is impertinent and scandalous and should be
23 | stricken.

24 |        5.      Complaint, p. 20, ll. 21-28; p. 21, l.1, as immaterial, impertinent and
25 | scandalous.

26 |       Starting with "In one of the phony bar complaints …" at p. 20, l.21 and
27 | ending with "… Defendant Wesson was in dire financial straits and needed
28 | money." at p. 21, l.1, Plaintiff makes improper allegations he invents without a

shred of support that Defendant Wesson, the victim of Plaintiff's threat of violence, was trying to extort money in exchange for dropping a felony prosecution he had no control over. This improper, shameful pleading is impertinent and scandalous and should be stricken.

6.      Complaint, p. 21, l.11, as immaterial, impertinent and scandalous. "As a result of uncovering corruption at City Hall, lose everything!"

Plaintiff alleges no substantive facts to support these serious, conclusory allegations of corruption and they are made only to impugn the character of the City of Los Angeles. This improper pleading is impertinent and scandalous and should be stricken.

7.      Complaint, p. 22, ll. 25-27; p.23, ll. 1-10, as immaterial, impertinent redundant and scandalous.

Staring with "Plaintiff is informed …" at p.22, ll. 25 and ending with "...punitive and exemplary damages" on p. 23, l.10. This language should be stricken. Not only is it repetitive with preceding language, Plaintiff is not entitled to punitive damages from any Defendant and the inflammatory, conclusory language of malice, deliberate indifference, and evil motive should be stricken

8.      Complaint, p. 24, ll. 20-24; p. 25, ll.1-2, as redundant and immaterial.

Starting with "Plaintiff is informed …" at p.24, l.20 to "…punitive and exemplary damages." at p. 25, l. 2. This language is duplicative of the language Defendants request be stricken in ¶ 7 above and it is cut and pasted from the Hunt Complaint, referring to 'Sanders' not named here but in *Hunt,* and should be stricken.

9.      Complaint, p. 27, ll. 20-21; p.28, l. 7, as immaterial.

Plaintiff is not entitled to Punitive damages and this language should be stricken.

10.     Complaint, p. 27, ll. 23-25, as immaterial.

Plaintiff brings this action in propria persona and is not entitled to

attorney's fees should he prevail. *Kay v. Ehrler, 499 U.S. 432, 437-38 (1991)* (refusing to award attorney's fees to a *pro se* litigant in a *§ 1983* case)

The inclusion of references to the personal finances of Defendants, the redundant and copied language from another lawsuit along with offensive personal and racially charged attacks would only serve ignoble and prejudicial ends and should be stricken.

## V.    CONCLUSION

For all of the foregoing, Defendants respectfully request the Court grant its Motion to Dismiss this litigation with prejudice as Plaintiff cannot state facts to sustain a claim upon which relief can be granted, and, additionally and/or alternatively, grant its Motion to Strike the aforementioned redundant, immaterial, impertinent, and/or scandalous language from the Complaint.

Dated:  June 22, 2017          Respectfully submitted,

MICHAEL N. FEUER, City Attorney
THOMAS H. PETERS, Chief Deputy City Attorney
GABRIEL S. DERMER, Assistant City Attorney

By:    /s/ Dora A.  Gonzalez
DORA A. GONZALEZ, Deputy City Attorney
Attorneys for Defendants
CITY OF LOS ANGELES; HERMAN J.
WESSON JR.; HUGO S. ROSSITTER; ERIC
READE and NELLY NAVA-MERCADO