Wayne Spindler
P.O. Box 16501
Encino, CA. 91416-6501
(213) 381-1403—phone
(213) 381-5542-fax

*In propia persona*

FILED

2017 JUL 21  PM 1: 11

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Wayne Spindler,** | **Case No.: 2:17-cv-00250-JLS-E** |
| **Plaintiff,** | Complaint Filed: January 11. 2017 |
| | **DEMAND FOR JURY TRIAL** |
| **vs.** | {Honorable Josephine L. Staton} |
| **City of Los Angeles; Herman J.** | **PLAINTIFF'S STATEMENT OF** |
| **Wesson, Jr.; Hugo S. Rossitter; Eric** | **GENUINE DISPUTES.** |
| **Reade; Nelly Nava-Mercado;** | Due Date: July 24, 2017 |
| **and Does 1 to 10,** | Hon. Charles F. Eick |
| **Defendants.** | [filed concurrently with Plaintiff's Declaration;(proposed) Order; Plaintiff's Memorandum of Points and Authorities in Opposition; and Plaintiff's Request for Judicial Notice.] |

- 1 -

## PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

# TABLE OF AUTHORITES

I.STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT............2

II. RESPONSE TO DEFENDANTS' ALLEGEDLY UNDISPUTED

    MATERIAL FACTS...................................................................8

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

Pursuant to Fed. R. Civ. P. 56(d) and Local Rule 56-2, Plaintiff Wayne Spindler sets forth the following material facts as to which it is contended there exists a genuine issue necessary to be litigated with respect to the Motion to Dismiss filed by Defendants.

## I. STATEMENT OF GENUINE DISPUTES OF MATERIAL FACT

The following facts are genuinely disputed between the parties and are material to the arguments made by Defendants:

1.          Plaintiff was illegally arrested for Penal Code §422a because he was engaged in a protected activity and his drawing and comments on his speaker card are free speech.

2.          Plaintiff never intended to threaten Mr. Wesson at any time.

3.          Plaintiff was retaliated against by the City and Wesson for the content of his drawings, his spoken words, and wearing of garb that he did as protesting the corruption and fee hikes imposed to the taxpayers and ratepayers of the City of Los Angeles.

4.          Plaintiff's 2nd Amendment rights were violated by the T.R.O. and subsequent 3 year restraining order which the City doesn't challenge in its moving papers and thus waives its opposition to this claim.

5.          The guns surrendered by the Plaintiff due solely as a result of

- 3 -

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

the Court orders of the T.R.O. and 3 year injunction was an illegal "taking" of his guns and ammunition and clips.

6.      Defendant Rossitter filed a sham restraining order in the name of the Los Angeles City Attorney to advance Defendant Wesson's "war" against Plaintiff.

7.      Defendant Reade served a known fraudulent T.R.O. because as an "experienced" workplace violence investigator knows the City of Los Angeles was **not** the one who filed it.

8.      Defendant Nava-Mercado was reckless in her arrest of Spindler having no evidence of any "threat" other than Defendant Wesson's self-serving narrative and a copy of a speaker card handed in **to speak at a public meeting** containing drawings on it.

9.      Defendant City is reckless and willful in its disregard for the safety and rights of public speakers at Brown Act sanctioned meetings. There are no checks and balances, including no consultation with **constitutional law experts and workplace violence order experts** at any time prior to the arrest of Spindler and filing of the T.R.O. all the way to prosecuting Spindler for a gun he turned in—a gun turned in by a sham T.R.O. filing.  Defendant City does not supervise

- 4 -

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

its employees and has no mechanism for supervising the actions of City Counselmembers, the Police Chief, and the City Attorney **when they violate State, Federal, or City Law.**

10.     There is no conflict of interest procedures in place in the City's Attorney's Office between criminal and civil filings and divisions and no Panel, or outside monitoring of the conflicts of the nearly 700 attorneys within the City Attorney's Office. The City Attorneys working in criminal say they don't talk to the Civil side, and vice versa. But a citizen has no way to report such conflicts **to the City Attorney and get resolution of the issues.** The State Bar of California will not look into the matter.

11.     A First Amendment claim for injunctive relief was not opposed by the Defendants, only monetary damages were.

12.     Herman J. Wesson, Jr. lied and perjured himself in the T.R.O. proceedings to gain a restraining order to use it to his advantage for publicity negatively against Spindler

13.     Rossitter pre-fabricated the T.R.O. before the May 11, 2016 meeting and falsely stated Wesson was an "employee" of the City Attorney so as not to have to seek the City of Los Angeles permission to file the sham T.R.O.

- 5 -

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

14.     Plaintiff Spindler has lost business and loss of his reputation and ability to be gainfully employed by any employer as an attorney or much less anything due to the negative publicity and reputation the City has put forward to the public about Spindler.

15.     Spindler was illegally removed from the May 11, 2016 meeting as he was not the one who interrupted the meeting, it was Wessson who interrupted the meeting and cause the disruption.

16. A *Monell* claim clearly is established. The conduct of a "code of silence" of the L.A.P.D. is known locally and been pled numerous times in other cases now and before. The City and the Defendants engage in unwritten but standing policies to expel public speakers, clear meeting rooms, falsely arrest and detain public speakers they oppose, and cut off time to speak, including interrupting and accosting the public speaker when speaking. As well, the filing of sham pleadings such as: a fake T.R.O., a falsely filed set of affidavits in criminal and civil proceedings, a false felony arrest, a false arrest under P.C. §422a, false arrests and assaults by L.A.P.D., and now just last week a criminal charge based entirely on information garnered from a fraudulent and void T.R.O. by the Defendants' Attorneys against Plaintiff.  Thus, the published Rules, and policies by conduct  of the Defendants show a pattern and practice of suppression of People

- 6 -

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

the Defendants are against or who express an opinion contrary to the desired goals of the Defendants.

17.     Defendants Wesson, Rossitter, Reade, and Nava-Mercado are not entitled to qualified immunity. Defendant Wesson engaged in retaliatory and knowingly illegal conduct against Plaintiff numerous times, singling him out. Police Chief Beck is running his Department with a "code of Silence" that allows criminal behavior and illegal actions by Police to be covered up and done in a way that in fact encourages violating civil rights of Angelinos. Defendant Rossitter, A City Attorney IV, is a benefactor of the "code of silence" engages in retaliatory actions against Plaintiff without fear of correction. Defendant Wesson knowingly violates the rights of free speech and assembly whenever he so chooses and only to allow in select members of the public he tolerates or wants to allow to speak.

18.     Defendant Reade and Defendant Nava-Mercado acted only on a self-serving narrative of Wesson, which violates clearly established statutory and Constitutional rights of which a reasonable person would know.

19.   Defendants acted with oppression and malice. Wesson lied and Rossitter manufactured a phony T.R.O. and never was it brought by the City of Los Angeles the only "employer" of these Defendants. Detectives Reade and Nava-

- 7 -

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

Mercado knew full well a self-service narrative is not the way to issue an arrest warrant on a criminal threat investigation, especially when the police officers at the scene **would not sign a complaint for Wesson's fabrication.**

20.      All of these named individual Defendants are not entitled to qualified immunity and are on their actions amenable to punitive damages under Federal and State Law.

21.      Plaintiff was injured physically and emotionally by these actions, and is being attacked to this day by Defendant City, so that Plaintiff had to stop voting, and fears for his life, and fears being jailed on malicious criminal charges. Pl. Dec. and exhibits.

## II. RESPONSE TO DEFENDANTS' ALLEGEDLY UNDISPUTED MATERIAL FACTS

| Statement of fact | Citation to Evidence | Plaintiff's Response To Statement of Fact | Plaintiff's Citation to Evidence |
|---|---|---|---|
| 1.*Plaintiff asserts the City and four new actors, City officials and employees, have again violated the very same primary rights stemming from his constant participation in public meetings.* | Def's memo at 1, ll.5-7. | Disputed. The Defendants this time have gained an illegal restraining order, seized Plaintiff's weapons and destroyed them, slandered and placed plaintiff in a false light, arrested him on a felony, and attempted to take his | Plaintiff's Complaint. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| | | bar license. These are even **more** excessive Violent and illegal actions against Plaintiff than the first suit. | |
| 2.*Plaintiff was arrested on May 13, 2016, for making a criminal threat and hate crime in violation of California Penal Code section 422, a Threat Crime, against Defendant Herman J. Wesson, Jr. President of the City Council.* | Def' Memo, page 1, lines 7-10. | Disputed. The arrest was for a "criminal threat" and not for a "hate crime." | P.C. §422(a) not a "hate crime." Complaint, page 39, exhibit B. |
| 3.*Probable cause for the arrest was Plaintiff intimidating true threat message to Defendant,* | Defendants memo Page 1 at ll. 10-12 | DISPUTED: The only "evidence" to show probable cause was a speaker card with a set of drawings (Def' Judicial Notice, Exhibit B. This is not close to a probable cause. There is no police report from May 11, 2016 by officers at the scene of the alleged incident. Defendant | Pl. Declaration, Pl. Memo points and authorites, speaker card, Def' jud. Not exh. B |
| 4. *Defendant Wesson, an African American."* | Defendants' Memo. at page 1, Lines 11-12. | UNDISPUTED. This Defendant has said he is before. | |
| 5. *"Plaintiff's intimidating true threat message to Defendant Wesson, an African American."* | Defendant's memo, page 1, ll. 11-12 | DISPUTED: the drawing is not "intimidating" to "Wesson" nor a "true threat message" as there is nothing of the kind. It was a speaker card with drawings on | Plaintiff's declaration, Page 9, paragraph 14. The D.A. confirmed it was not a threat of any kind, but was "deeply offensive, morally wrong, and socially . reprehensible" |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| | | it at a public meeting. Plaintiff clearly states what he meant, that it was a protest, nothing more. A threat was never intended. | Complaint, Exh. C, ,page 41-42; Pl. Decl. at paragraph 21. |
| 6. *The card had "...of a person hanging from a tree, a burning cross, a Ku Klux Klan ("KKK") hooded figure waiving a noose in one hand and in the other, a sign saying "Wesson = Nigger" and 'FUCK YOU HERB."* | Defendants' Memo. P & A P.1, ll. 12-14 | DISPUTED: The card was with a burning cross showing corruption burning down the city; a rate payer hanging from a tree, a figure that is the City, a hooded figure, not a "KKK" figure and not meant to be anything to do with the KKK, but like the KKK as a parody or simile carrying a noose **not waiving it, the sign says Herb = Nigger (Not "Wesson = Nigger") and the back said "Fuck U Herb" not "Fuck You Herb".** Nigger was used like rap music that Herb is being a "gansta" raising rates. Symbolic message of corruption. Judge said it was a "hate message" | Def. Jud. Not. Exh. B; Plaintiff's decl. at 14 Complaint, Exhibit D p. 57. ll. 1-23. and page 58 ll.13-18. |
| 7. *"The Hon. Carol Boas Goodson, Judge of the California Superior Cout, deemed the message a racially motivated threat issuing a Workplace* | Defendants' Memo. P & A P.1, ll. 16-19. | DISPUTED: Compl. Exh. D, p. 59. L. 13. Judge said "...it was clearly a hate message." Judge never said on the record it was "racially motivated threat!" Judge never ruled it | Compl. Exh. D, page 59, l. 13. |

- 10 -

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | | was an actual **threat** at all. | |
|---|---|---|---|
| 8. *The Los Angeles District Attorney chose not to prosecute.* | Defendants' Memo , page 1, Line 20. | UNDISPUTED: | Complaint, Exh. C |
| 9.*The First Amendment will not shield Plaintiff.* | Def. Memorandum Page 1, ll. 22. | DISPUTED. The card was handed in during a **constitutionally protected activity.** The card was used to speak at a meeting, thus the card had a "legitimate purpose" apart from the drawings on it. Thus, Anti-SLAPP protects the activity engaged in by Plaintiff on May 11, 2016. Criticism of elected officials in public forums is fully protected free speech. There was no evidence of an "imminent" threat from the card. | Pl. Memo of points and authorities. Pl. Jud. Notice, exh. B. |
| 10.*"Plaintiffs true threat is an unprotected message of incitement."* | Def. Mem. P. 1, Line 23. | DISPUTED. The card never had a "message of incitement." And as dicussed earlier the activity was **protected** and no threat was **intended.** | See above 1 to 9. |
| 11.*"As in his previous lawsuit, Plaintiff alleges the same baseless constitutional challenges to his arrest and the same prior restraint challenge to the* | Def. Memorandum, Page 1, ll 23-26. | DISPUTED: The Rule **as applied** to Plaintiff violates State, Federal, and even Local rules guaranteeing access and free expression and participation at all public meetings. | Pl. Declaration; Pl. Jud. Notice Exh. A Brown Act; Exh. K and L (2 decisions that the City violates the Brown act using rules of decorum "as applied" to do so. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| City's use of its "Rules of Decorum" ("Rules.") These rules have passed Constitutional muster…" | | | |
| 12. As a licensed attorney in California, Plaintiff should know that the Rules are content neutral, time, place, and manner restrictions for the orderly conduct of City business…" | Def. Memo. at pages 1 (lines 27-28; page 2, line 1 | DISPUTED: As an attorney, the City Attorney should know that the City has been defeated in Court over **"as-applied" misuse of its rules against public participation and continues to do so to this day in violation of the Law.** | See 11 above. |
| 13. "…and that his incendiary, racially motivated threats directed to Defendant Wesson are not protected by the First Amendment." | Def. Mot. Page 2, ll. 1-3. | DISPUTED. There never were "threats" plural ever alleged anywhere in my paperwork. No threat was directed against Wesson. And the First Amendment protects a person from retaliation and victimization from the Government he protests against. | See #11 and #12 above. CA. Const. Art. I, §2. Ralph M. Brown Act. |
| 14. "…the collateral attack doctrine prohibits Plaintiff's challenge in this Court to the Restraining Order issued by the Superior Court." | Def. Memo. Page 2, ll. 3-4. | DISPUTED: The T.R.O. and injunction **filing** and **the perjury** within can be challenged on the basis it was a furtherance of retaliation against Plaintiff for his exercise of his right to speak and participate at public meetings. The | Pl. Jud. Not. Exh. B. |

- 12 -

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| | | TRO is being appealed in State Court under theories discussed by Plaintiff in that case. | |
| 15. *"Plaintiff shamelessly turns the facts on their head and attempts to use this lawsuit as a vehicle to further harass and intimidate the very Defendant the State Court has ordered him to stay away from (id.)"* | Def. Mot. Page 2, ll. 5 – 8. | DISPUTED. First off, the Court order does not ever **prevent Plaintiff from communicating with Wesson by written, or oral, or any other means!** The order allows attendance to speak at all public meetings, yet takes away Plaintiff's right to bear arms for 3 years. No one is using a lawsuit to "intimidate" anyone. The Plaintiff has the right to redress his grievances in Court. Plaintiff has not "shamelessly turned the facts on their head" and the City's TRO and use of the family court was abusive and retaliatory. | Pl. Compl. Exh. D, page 47 (Section 7, item (4) **unchecked.** CA. Const. Art I. §2 redress of grievances by suit protected activity. Filing of a lawsuit is not harassment-it is a protected redress of grievances. *Byers v. Cathcart* (1997) 57 Cal. App. 4th 805, 809. |
| 16. *In another rambling, duplicative, Complaint, Plaintiff is guided by his anger that the threat he made resulted in serious consequences, but not because he has any valid claims, making this another sham Complaint.* | Def. Mot. Page 2, ll.20-22 | DISPUTED. Plaintiff has alleged in his declaration and shown by documentation his civil rights have been and currently continued to be violated by the Defendant City. | See #1-15 above. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| 17. *"Plaintiff claims are implausible and the entire Complaint fails to state a claim upon which relief can be granted..."* | Def. Mot, Page 2, ll. 23-24 | DISPUTED. As set forth above. | See #1 to 16 above. |
| 18. *"Plaintiff is an attorney in good standing with the Cal. State Bar entrusted with legal knowledge.* | Def. Mot, page 2 ll. 22-23. | UNDISPUTED, except that an attorney cannot be entrusted to know everything on every legal subject he engages the law on. The Plaintiff is new to civil rights filings and is trying to redress his grievances suffered in a *pro se* filing. | See Plaintiff's Declaration, and Complaint Exhibits. |
| 19. *"...he made the threat loosely within the context of a public meeting...the Threatening message however, is unprotected speech and thus, the entire Complaint crumbles."* | Def. Mot. Page 5, ll. 3-6 | DISPUTED. No threatening message was made. The message was the use of intensifiers and drawings depicting symbolism of corruption and excessive ratehikes of City Hall. The complaint never "crumbles" but the Defendants' excuse for the arrest and TRO and press conferences **does crumble. It was all illegal and actionable.** | Pl. Dec. and Complaint Exhibits. See 1-18 above. |
| 20. *"Plaintiff identified himself as "wayne from encino" and made racially motivated depictions of a hooded figure,* | Def. Mot. Page 5, ll. 25-27. | DISPUTED. No racially motivated depictions were present, Plaintiff did not depict himself in the drawing as a KKK member and no KKK | Pl. Declaration, page 9, paragraph 14 Complaint Exh. D, p. 57-58; see 6 above |

- 14 -

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| *presumably of himself in his usual KKK garb that he wears to meetings."* | | garb was worn to the May 11, 2016 meeting. | |
| *21. "A figure is hanging from a tree and a cross burning. The figure is presumably Defendant Wesson (who is African American). "* | Def. Mem. Page 5,ll.27-28. Page 6, line 1. | DISPUTED. The figure was absolutely **not** Wesson. The figure was a ratepayer being hung out for outrageous rate hikes, a victim of the KKK style City who lynches the ratepayers and taxpayers to feed its coffers with more and more money to fund corruption. | See #6 and #20 above. |
| *22. "Plaintiff submitted the threatening card knowing it would be delivered directly to Defendant Wesson as the committee chair calls up public speakers. Plaintiff's target is undisputed. Plaintiff's message of intimidation and threat of harm is undeniable.* | Def. Memo Page 6, ll. 4-7 | DISPUTED: The card was not a threat nor intended as a threat. The card was not a "message of intimidation and threat of harm." The card as explained was protected free speech in a public forum. The card was filled out to speak. | Pl. Complaint. Pl. Declaration. See 1-21 above. |
| *23. "Plaintiff's racial animus against Defenant Wesson is palpable, both in the comment card and in the improper Complaint* | Def. Memo, page 6 ll. 12-14. | DISPUTED. Defendant Wesson as for his ability to tell the truth didn't state he uses two different identities to hold title to property and didn't pay the bank on 2 | Pl. Complaint. Exh. H, pp. 74-79 |

- 15 -

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | | |
|---|---|---|
| *allegations impugning Defendant Wesson's ethics and integrity with allegations not material to any cause of action."* | | mortgages the same time, and has had tax debts owed and long after paid (after he got his current City job no less.) Thus these pieces of evidence cited shows Wesson had a motivation to need money (which he could of exhorted had he gotten the D.A. to file the criminal charges.) And Wesson doesn't pay his debtors, thus needs money and is more likely to be bribed or influenced by contributions. As well Wesson paid current the 2 mortgages right after the June 10, 2016 criminal court date when the D.A. the first time declined to file the phony P.C. 422 (a) charge. Goes to truthfulness and integrity. The City claims Wesson was put in fear. But he conceals information on affidavits and doesn't pay his debts. These issues are not about anyone's "race" at all. Wesson wanted to invade the privacy and personal business of Plaintiff Spindler. Yet, the City wants to call searching public officials' records a |

- 16 -

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | | "palbable" "racial animus?" **Nonsense!** | |
|---|---|---|---|
| 24. *"Yet, Plaintiff alleges the following contrived and tortured explanation of his threatening message, which even if accepted a true (sic.) is not only implausible, it is contradicted by the transcript of the Superior Court at the hearing on the Restraining Order."* | Def. Memo, Page 6, ll 15-18 | DISPUTED. As explained the drawing was not intended as a threat to Wesson, and is consistent with the explanation given before hand | See 1-23 above. Def. Memo page 6, ll. 20-26; Page 7 ll. 1-7. |
| 25. *"Plaintiff was aware of the fear this core imagery invokes notwithstanding his disingenuous attempt to cleanse it"* | Def. Memo, page 7, ll. 17-18 | DISPUTED. Plaintiff never made a threat or intended one. No known and imminent "threat" is shown on the card nor was any threat said at the meeting. | See 1-24 above. |
| 26. *Plaintiff himself wears a white hood emblazoned with a red swastika to the many City meetings he attends as he concedes in the Complaint."* | Def. Memo page 7, ll.19-20. | DISPUTED. Plaintiff wears a hood to **some** meetings, and did not wear a hood at the May 11, 2016 meeting.  In fact, Defendant Wesson at his press conference in front of the L.A. Sentinel showed Plaintiff at an **undated and unrelated meeting wearing the hood** protesting **police violence** and made it falsely appear that **Plaintiff handed the** | See 1-25. |

- 17 -

## PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

| | | card to Wesson wearing the hood, a lie and caused death threats in the community against Plaintiff. | |
|---|---|---|---|
| 27. *"It is not a leap to recognize that the hooded figure chasing down Defendant Wesson with a noose in his hand is Plaintiff, not a DWP water drop."* | Def. Memo, page 7, ll.25-27. | DISPUTED. It is **big reach---**and in absolutely no time in the TRO hearing and this case has there been a statement that the hooded figure is "chasing Wesson!" The DWP water drop looks like a blue hooded cartoon. The DWP acts like the Klan like the City does too.  The DWP just got a 24% payhike and now the rates will be raised again, after a 22% increase 2 years ago. Thus, the ratepayers will be "roped" again to pay for the corruption of City Hall pay-to-play. | #1-26 above. |
| 28. *Plaintiff is not a "rap artist, he uses the word "Nigger" Pejoratively and the epithet is considered an abusive slur when used by a white person against an African-American* | Def. Memo page 7, line 28.page 8, ll. 1-2. | DISPUTED. Plaintiff is a "rap artist" as he raps at City Council meetings as well. Plaintiff listens to rap music and has since the 1990's. Using the word "nigger" which is also "nigga" has many different meanings, like a black man trying to be "white" or | See 1-27 above. |

- 18 -

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| | | someone any race trying to put bad information on a competitor or suitor for a girl or deal like "damn, dat nigga shade me good." "Shade" is negative stuff said. Defendant Wesson is trying to sell out the poor to the wealthy campaign donors, yet addresses the black community as being against oppression of the community, yet that's exactly what Wesson does. When someone tries to call him out on raising rates for DWP, which is a clearly regressive tax on the poorest of black families, he and other black politicians cry "racism" by the "white media." Or by the "white land owners." Yet Wesson gets free dinners, trips, tickets, and $200,000 a year plus benefits to sell out the poorest Angelinos. Thus…He "acts like a nigger." | |
| 29. *"Plaintiff sprinted across the constitutional line with racist intimidation to made Defenant Wesson fearful of his safety and his* | Def. Memo, page 8, ll. 2-4 | DISPUTED. The Defendant misstates the *Watts* case. The Court defined a speaker had to **intend the message to be a threat.** The Government cannot | #1-28 above. |

- 19 -

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| *"true threat" has no First Amendment" protection.* | | define what is free speech. | |
| *30. "Plaintiff's true threat message of violence in conjunction with a two-day investigation in their specialized area of threat management, led the arresting detectives (Defendants Reade and Nava-Mercado) of the Threat Management Unit ("TMU") of the Lo Angeles Police Department , to the reasonable conclusion that Plaintiff was in violation of Penal Code section 422 (a) Criminal Threats.* | Def. Mot. Ll. 12-17. | DISPUTED: The arrest was based on a speaker card and a self-serving narrative by Wesson. There was no real "investigation." It was done wholly improperly and without probable cause and a stunt, Plaintiff was literally arrested on the steps of L.A. City Hall, 2 days after the May 11th 2016 meeting attempting to go to public meetings. | Pl. Complaint. Pl. Declaration. See 1-29 above. |
| *31. "The arrest was not motivated by the Defendants' intent to silence Plaintiff"* | Def. Mot. Page 9, line 13. | DISPUTED: The Defendants' entire purpose was to stop Plaintiff from going to any more public meetings. | See 1-30 above. |
| *32. Defendants Reade and Nava-Mercado had legitimate law enforcement objectives to protect a victim of* | Def. Mot. Page 9, ll. 18-23. | DISPUTED: As said earlier the TRO was a sham filing not even by the City of Los Angeles no less. There was no signed police report from May 11th | See 1-31 above. The officers on the scene will be deposed as well to show the fraud committed by Defendants' Reade and Nava-Mercado claiming they had "probable cause" |

- 20 -

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| *a criminal threat and hate crime and reasonably and objectively determined probable cause existed to arrest Plaintiff for making Defendant Wesson fearful for his personal safety, as has been confirmed by the issuance of a restraining order."* | | by the officers there at the meeting. It was all based on Wesson's self-serving statements and a speaker card. No one questioned the Plaintiff in the "investigation" until Plaintiff was arrested and cuffed to a chair and was asked to make a confession the card was a threat! It was bogus arrest all the way. | to arrest on a major felony. |
| 33. *"Defendant Wesson feared for his safety."* | Def. Mot. Page 10, line 3. | DISPUTED: Wesson **lied** he feared for his safety. In fact he admitted he was simply "unbelievably angry" at Plaintiff **the first time he noticed the card.** Then later on May 19, 2016 he said he was afraid. Then after he got the T.R.O. on May 20, 2016, Wesson set up a gigantic presser for the following Monday , May 23, 2016 when he let it slip out he was lying about what he said to the cops and the family court. | Complaint, Exhibit F, page 67, paragraph 3: "When this first occurred to me, I was unbelievably angry" Wesson told reporters Monday adding "this incident is so much bigger than me." Monday, May 23, 2016 Daily news front page. |
| 34. *"...If Plaintiff considered these errors to nullify the petition for the Restraining Order, he had an opportunity to raise it at the hearing, and he did not."* | Def. Motion, page 11, ll.15-17. | DISPUTED: The Superior Court judge never played the audio of the meeting and she would not allow the Plaintiff to state his side. The arguments were presented in the opposition to the TRO. | Pl. Requst . Jud. Not. Exh. B. |

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | | | |
|---|---|---|---|
| 35. "Plaintiff's allegation in reference to the Bane Act is unintelligible." | Def. Motion, page 19, ll. 23-24. | DISPUTED: The City is liable for the actions of Wesson, Reade, Nava-Mercado, and Rossitter as the City is the employer of these 4 defendants. The Complaint specifies deprivation of rights under the CA. and U.S. Constitution. A timely pre-suit claim was filed thus allowing the claim. | Complaint, exh. A, , 2 damages claims denied by the City. Timely filed within 6 months of the May 11th and May 13 incidents in the case. Deprivations of protected rights alleged. |
| 36. "Defendants are immune from malicious prosecution claims. See Gov. Code §821.6. | Def. Mot. Page 20, ll. 5 -6 | DISPUTED. The TRO was filed as a void filing and a sham. Thus, the Defendants are in fact liable. | Pl. Jud. Not. Exh. B. |

Dated this 21th Day of July 2017

_____

Wayne Spindler
*In propia persona*

– 22 –

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**