**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| WAYNE SPINDLER, | ) | NO. CV 17-250-JLS(E) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND ORDER |
| | ) | |
| CITY OF LOS ANGELES, et al., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**BACKGROUND**

Plaintiff, a practicing attorney proceeding <u>pro se</u>, filed this civil rights action pursuant to 42 U.S.C. section 1983 on January 11, 2017. Defendants are: (1) the City of Los Angeles ("City"); (2) City Councilman and City Council President Herman S. Wesson, Jr., sued in his individual and official capacities; (3) Hugo S. Rossiter, an employee of the Los Angeles City Attorney's Office, sued in his individual and official capacities; and (4) Los Angeles Police

///

///

Department detectives Eric Reade and Nelly Nava-Mercado.[1]

On June 22, 2017, Defendants filed a "Motion to Dismiss the Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(6) and Motion to Strike Pursuant to Federal Rules of Civil Procedure 12(f)," accompanied by a Request for Judicial Notice. On July 21, 2017, Plaintiff filed: (1) "Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss, etc." ("Opposition"); (2) a "Filing of Original Declaration of Wayne Spindler"; (3) "Plaintiff's Statement of Genuine Issues"; and (4) "Plaintiff's Request for Judicial Notice, etc."

### SUMMARY OF ALLEGATIONS IN PLAINTIFF'S COMPLAINT

The Complaint is confused, rambling and disorganized. Plaintiff's claims appear to arise out of an incident at a City Council meeting on May 11, 2016, at which Plaintiff submitted a speaker card which assertedly caused Plaintiff to be arrested for making criminal threats. Plaintiff alleges the following:

> Plaintiff is a "private non-public person" who speaks
> at and participates in meetings of various municipal bodies
> including the City Council, the Los Angeles Police

---

[1] The Complaint does not indicate the capacities in which Plaintiff sues Defendants Reade and Nava-Mercado. However, "where state officials are named in a complaint which seeks damages under 42 U.S.C. § 1983, it is presumed that the officials are being sued in their individual capacities." <u>Entler v. Gregoire</u>, ___ F.3d ___, 2017 WL 4448218, at *1 n.1 (9th Cir. Oct. 6, 2017) (citation omitted).

Commission and various Committees (Complaint, pp. 3-4.[2]

Defendants have targeted Plaintiff as a "troublemaker" and

"Racist" for peacefully and lawfully defending Plaintiff's

rights (id., p. 4).


The City has adopted and enforced policies authorizing

the selective censorship of Plaintiff's speech expressing

views critical of the City and/or its officials.  These

polices include its "Rules of Decorum" and related

practices, the use of criminal prosecutions and restraining

orders, the fabrication of reports and statements, the use

of press conferences "to further the lies," the use of "high

powered lobbyist contacts," the removal of persons from

public meetings and the interference with individuals'

rights to speak and assemble at public meetings (id., pp. 4-

5).  The City has failed to train, supervise, monitor and

correct City officials who preside over public meetings and

City police officers (id., p. 6).


Defendants have "trampled on" California's Brown Act by

limiting the public to one minute of public comment, cutting

speakers off in mid-sentence, expelling speakers from

meetings on false claims of disruption, and misplacing,

losing or overlooking "speaker cards" (id., p. 8).

///

[2]    Portions of the Complaint contain numbered paragraphs, while other portions do not.  The Court refers to the allegations in the Complaint by page number.

The City's Department of Water and Power ("DWP")
ignores residents' requests for help and has "draconian"
ways of dealing with those with whom it disagrees or who
expose its corruption (id., p. 9).

On April 16, 2016, Defendant Rossiter prepared an
affidavit in support of a petition for a restraining order
stating that Plaintiff had submitted a speaker card at a
City Council meeting depicting violent conduct such as
hanging (id., p. 17).[3]  Rossiter did not register his
outside business for payment of tax licenses, etc. (id.).
Defendant Wesson did not use his true name in an affidavit
filed in support of the petition for a restraining order
(id., p. 18).  Wesson also "fudged some very important voter
registration paperwork in what appears to be voter fraud and
perjury" (id.) (emphasis deleted).  Wesson secured two
mortgages in two different names and defaulted on both
(id.).

At a meeting of the Rules, Elections and Neighborhood
Empowerment Committee at the Van Nuys City Hall on May 11,
2016, Defendant Wesson ("who uses the fake first name
'Herb'") became angry at Plaintiff because of Plaintiff's

_____

[3]     The copy of this alleged declaration attached to the
Complaint shows an execution date of April 16, 2016,
approximately two weeks <u>before</u> the alleged event giving rise to
Plaintiff's claims.  It is unclear whether the date(s) are in
error or whether the April 16 affidavit related to a meeting
different from the meeting on which Plaintiff's present claims
are based.

comments regarding a DWP proposal and read out Plaintiff's
true name, breaching Plaintiff's anonymity (id.).  Defendant
Wesson called Plaintiff an "idiot" and threatened to beat
Plaintiff up (id.).  Plaintiff was told to leave the
building (id.).

Defendant Wesson also informed the City Attorney about
Plaintiff's "speaker card" which contained a cartoon and
comments about Defendant Wesson to the effect that Wesson
was "equal to a 'Nigger'" and the expression "F-U-Herb"
(id.).  The cartoon showed a person hanging from a tree, a
picture resembling a burning cross and a hooded figure with
"cute little feet, and a tongue stuck out carrying what
[was] a small sign that [read] 'Herb = 'Nigger'" (id., pp.
9-10).  Many other people have submitted speaker cards with
cartoons and doodles, and "black people" and others have
called Wesson a "Nigger" because he is a "sell-out" (id., p.
10).  The City's mascot for its water conservation program
was a blue water drop with features and feet resembling a
hooded figure "like a funny KKK caricature" (id.).
Plaintiff views the DWP as "lynching" taxpayers, and sees
City Hall as a "hooded figure" "coming always to 'lynch' the
rate-payers."  According to Plaintiff, "[t]he City itself is
being destroyed by corruption, as if it is a burning cross
on a hill" (id.).  Wearing a hood and drawing "KKK like"
drawings and swastikas are expressions of Plaintiff's
political message protected by the First Amendment, evincing
Plaintiff's protest of his oppression as a White American by

Afro-American and Jewish American City Officials (<u>id.</u>, p. 12).  The epithets "Nigger" and "Jewboy" are "symbols of blatant racism toward African Americans by LAPD" (<u>id.</u>).

A police "sergeant at arms" escorted Plaintiff out of the room; however Plaintiff was not arrested (<u>id.</u>, p. 11).

Two days later, on May 13, 2016, police officers surrounded Plaintiff on the steps of City Hall (<u>id.</u>). Defendants Reade and Nava-Mercado took Plaintiff to the Metropolitan Detention Center and booked Plaintiff for a hate crime and making a criminal threat (<u>id.</u>).  Defendants set bonds totaling $100,000 (<u>id.</u>).  After eight and a half hours in detention, Plaintiff posted bond and was released (<u>id.</u>).  The District Attorney did not file charges (<u>id.</u>). The arrest was unlawful and illegal (<u>id.</u>).  The detention constituted excessive force and cruel and unusual punishment (<u>id.</u>, p. 12).  Defendants previously caused Plaintiff to be arrested for misdemeanor "failure to disperse" (<u>id.</u>, p. 11).

Defendant Rossiter, along with a cameraman and an "entourage" including Defendants Reade and Nava-Mercado, obtained a three-year restraining order from the Los Angeles County Superior Court (<u>id.</u>, p. 11).

The City's Rules of Decorum, as interpreted and applied by Defendants, are impermissible content-based prior restraints on free speech and the right of assembly, are

vague and ambiguous, and allow for unbridled discretionary
enforcement based on subjective analysis by Defendants (id.,
p. 13).  Depending on a city official's interpretation of
the word "impertinent," a speaker may be silenced or ejected
based on the viewpoint expressed (id., p. 15).  The Rules of
Decorum do not provide a person of ordinary intelligence a
reasonable opportunity to understand what conduct or speech
is prohibited, and instead authorize and encourage arbitrary
and discriminatory enforcement (id.).

Defendant Wesson went on a "press barrage" calling for
a "lynch mob of every community group possible to attack
Plaintiff" (id., p. 18).  As a result, Plaintiff has lost
nearly all of his business and tens of thousand of dollars,
and has received death threats (id.).  Plaintiff cannot hold
regular business hours for fear of harm to himself and
clients (id.).  The media has labeled Plaintiff a racist, a
misogynist, a homophobe and a KKK member (id., p. 19).
These "false light attacks" by Wesson have damaged Plaintiff
(id.).

Wesson and Rossiter conspired with a lobbying firm and
the family that owns the Los Angeles Sentinel newspaper
(id.).  A lobbyist has contacted the State Bar to "agitate"
for disbarment proceedings against Plaintiff (id.).  Someone
has been encouraging Plaintiff's clients to file complaints
with the State Bar or demand refunds (id.).  The Los Angeles
Police Department lobbied the district attorney's office to

file charges against Plaintiff (<u>id.</u>, p. 20).  Plaintiff
removed himself from the "voter rolls" (<u>id.</u>).  Defendants
have created a "life threatening situation where Plaintiff
would be attacked and killed without so much as a weapon to
defend himself!" (<u>id.</u>) (emphasis deleted).

Plaintiff went into hiding (<u>id.</u>).  Plaintiff believes
Defendants schemed to extort money from or to bankrupt
Plaintiff (<u>id.</u>).

The Complaint contains the following claims for relief:

1.  Unlawful arrest in violation of the First, Fifth and
Fourteenth Amendments (First Claim for Relief);

2.  Enforcement of unconstitutional Rule of Decorum in violation
of the First, Second, Fourth, Fifth and Fourteenth Amendments (Second
Claim for Relief);

3.  "Fabrications," based on an alleged failure to intervene in
unlawful detention and arrest by Defendants, purportedly under <u>United
States v. Koon</u>, 34 F.3d 1416 (9th Cir. 1994), <u>rev'd on other grounds</u>,
518 U.S. 81 (1996) (Third Claim for Relief);

4.  Violation of the Bane Act, California Civil Code section
52.1, apparently against the City on a theory of vicarious liability
(Fourth Claim for Relief);

///

5.   Malicious prosecution, apparently based on the obtaining of the restraining order from a "fabricated set of facts" deeming Plaintiff's speaker card to contain a "criminal threat" (Fifth Claim for Relief); and

6.   False imprisonment, attempted extortion, malicious interference with business relations, harassment, retaliation, theft and "Anti-Slapp," based on the allegations that Defendants allegedly "detained, attempted to extort money and concessions of liberty," deprived Plaintiff of his right to conduct business, harassed, retaliated against and discriminated against Plaintiff, took Plaintiff's guns and ammunition, and engaged in strategic litigation against public participation by obtaining the restraining order and by falsely arresting and detaining Plaintiff (Sixth Claim for Relief).

Plaintiff seeks injunctive relief and compensatory and punitive damages (id., pp. 16, 26-28).

Plaintiff attaches a number of exhibits to the Complaint, including: (1) a "City of Los Angeles Speaker Card" dated May 11, 2016. from "Wayne from Encino," bearing drawings appearing to be a burning cross, a person hanging from a tree, and a cartoon figure bearing a sign stating "Herb = Nigger"; (2) a "Notice of Lobbying Registration" overwritten with the handwritten statement "FUCK-U HERB"; (3) Plaintiff's tort claims; (4) documents related to Plaintiff's prosecution for making criminal threats in violation of California Penal Code section 422, including a deputy district attorney's "Charge Evaluation Worksheet" memorializing the decision

declining to prosecute Plaintiff; (5) a "Workplace Violence Restraining Order After Hearing," apparently issued against Plaintiff pursuant to California Code of Civil Procedure section 527.8[4] by a judge of the Los Angeles County Superior Court on June 10, 2016, and a reporter's transcript of proceedings in that case; (6) the "Declaration of Herman J. Wesson, Jr." and the "Declaration of Deputy City Attorney Hugo S. Rossiter apparently filed in the restraining order case; (7) a letter from a Los Angeles police detective to Plaintiff recording that Plaintiff allegedly had surrendered his firearms for safekeeping due to the issuance of the restraining order;[5] (8) a "Certificate of Release of Federal Tax Lien" and a "Notice of Rescission of Notice of Default" apparently relating to Defendant Wesson; and (9) various newspaper articles.

**MOTION TO DISMISS**

**I.  Defendants' Contentions**

Defendants contend:

1.  Plaintiff assertedly fails to allege a First Amendment violation because: (a) Plaintiff allegedly made an unprotected "true threat"; (b) detectives assertedly had probable cause to arrest

---

[4]     Section 527.8 authorizes an employer to seek a restraining order on behalf of an employee who has "suffered unlawful violence or a credible threat of violence from any individual. . . ."

[5]     See Cal. Code Civ. Proc. § 527.9 (requiring person subject to a restraining order issued pursuant to section 527.8 to relinquish firearms).

Plaintiff for violation of California Penal Code section 422; (c) the
Superior Court's order allegedly did not violate the First Amendment;
and (d) application of the Rules of Decorum to Plaintiff assertedly
did not violate the First Amendment;

2.  Plaintiff assertedly fails to allege a Fourth Amendment false
arrest or excessive force claim because probable cause assertedly
existed for the arrest and Plaintiff allegedly suffered no physical
injury;

3.  Plaintiff assertedly fails to allege any Fifth or Fourteenth
Amendment due process violation;

4.  Plaintiff's excessive force claim allegedly lacks merit
because Plaintiff assertedly did not suffer any conviction and because
Plaintiff allegedly fails to allege physical injury;

5.  Plaintiff assertedly fails to allege a violation of the Free
Speech Clause of the California Constitution; money damages allegedly
are unavailable under that provision;

6.  Plaintiff assertedly failed to allege a section 1983 claim or
a <u>Monell</u>[6] claim;

///

///

7.  Plaintiff's state law claims for "fabrication," violation of

---

[6]     See <u>Monell v. New York City Department of Social
Services</u>, 436 U.S. 658 (1978) ("<u>Monell</u>").

the Bane Act, malicious prosecution, false imprisonment, attempted

extortion, malicious interference with business relations, harassment,

retaliation, theft and "anti-Slapp" allegedly do not state any claim

for relief and violate Rule 8 of the Federal Rules of Civil Procedure;

and


8.  Plaintiff allegedly is not entitled to punitive damages.


## II.  Standards Governing Motion to Dismiss


To survive a motion to dismiss under Rule 12(b)(6), "a complaint

must contain sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face." Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (citation and internal quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Id.


The Court "must accept as true all of the factual allegations

contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94

(2007) (citations omitted); Zucco Partners, LLC v. Digimatic Corp.,

552 F.3d 981, 989 (9th Cir. 2009) (on motion to dismiss, court takes

as true all non-conclusory factual allegations in the complaint and

construes the complaint in the light most favorable to the plaintiff).

Ordinarily the court must construe a pro se litigant's pleading

liberally and hold a pro se plaintiff "to less stringent standards

than formal pleadings drafted by lawyers." See Erickson v. Pardus,

551 U.S. at 94 (citation omitted).  However, licensed attorneys

representing themselves, such as Plaintiff, "are not entitled to the same liberal treatments as pro se litigants if they are registered members of the bar." <u>Osgood v. Main Street Marketing, LLC</u>, 2017 WL 131829, at *3 (S.D. Cal. Jan. 13, 2017) (citing cases).

"Generally a court may not consider material beyond the complaint in ruling on a Fed. R. Civ. P. 12(b)(6) motion." <u>Intri-Plex Technologies, Inc. v. Crest Group, Inc.</u>, 499 F.3d 1048, 1052 (9th Cir. 2007) (citation and footnote omitted). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." <u>United States v. Ritchie</u>, 342 F.3d 903, 907 (9th Cir. 2003) (citations omitted). Here, because the Court is dismissing the Complaint with leave to amend for the reasons discussed below, the Court need not and does not convert the Motion to Dismiss into a summary judgment motion. However, the Court may consider allegations in Plaintiff's opposing documents in deciding whether to grant leave to amend. <u>See</u> <u>Broam v. Bogan</u>, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).[7]

The Court may not dismiss a complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 623 (9th Cir. 1988) (citations and quotations

---

[7]     Except as expressly stated herein, the Court denies without prejudice the parties' respective Requests for Judicial Notice.

omitted); see also Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000)

(en banc) (district court should grant leave to amend "unless it

determines that the pleading could not possibly be cured by the

allegation of other facts") (citation and internal quotations

omitted).


**III.  The Complaint States a First Amendment Claim Relating to the**
       **Speaker Card.**


The Free Speech guarantee of the First Amendment is not absolute.

Virginia v. Black, 538 U.S. 343, 358 (2003).  Among other things, "the

First Amendment permits a State to ban a 'true threat.'"  Id.

(citation omitted); see United States v. Bagdasarian, 652 F.3d 1113,

1116 (9th Cir. 2011).  Defendants contend the speaker card contained

"true threats," and hence Plaintiff's expulsion from the City Council

meeting and subsequent arrest assertedly did not violate the First

Amendment.


"'True threats' encompass those statements where the speaker

means to communicate a serious expression of an intent to commit an

act of unlawful violence to a particular individual or group of

individuals."  Virginia v. Black, 538 U.S. at 359 (citations omitted).

The speaker need not actually intend to carry out the threat or to

cause physical harm to the listener.  See id. at 359-60.  "Rather, a

prohibition on true threats 'protect[s] individuals from the fear of

violence' and 'from the disruption that fear engenders,' in addition

to protecting people 'from the possibility that the threatened

violence will occur.'"  Id. at 360 (citation omitted; original

brackets).  Whether a statement constitutes a true threat generally is a question of fact for the trier of fact.  See Fogel v. Collins, 531 F.3d 824, 829 (9th Cir. 2008); Melugin v. Hames, 38 F.3d 1478, 1485 (9th Cir. 1994); see also Nielander v. Bd. of County Commissioners of County of Republic, Kan., 582 F.3d 1155, 1166 (10th Cir. 2009).

In United States v. Bagdasarian, 652 F.3d at 1117, the Ninth Circuit held that a true threat exists if the speaker subjectively intended the statement as a threat.[8]  The Ninth Circuit previously had applied an objective test asking whether "a reasonable person would foresee that the statement would be interpreted by those to whom [the speaker] communicates the statement as a serious expression of intent to harm or assault."  Fogel v. Collins, 531 F.3d at 831.  In United States v. Bagdasarian, a criminal case, the Ninth Circuit approved the use of a subjective test but ruled that whether the objective test also applied depended on the language of the criminal statute at issue.  United States v. Bagdasarian, 562 F.3d at 1117.  The Ninth Circuit has not decided whether both tests apply in a civil case.  See Fogel v. Collins, 531 F.3d at 831 (pre-Bagdasarian civil case observing that the Ninth Circuit had "thus far avoided deciding whether to use an objective or a subjective standard in demonstrating whether there has been a 'true threat'"; declining to resolve issue); Burge v. Colton Sch. Dist., 100 F. Supp. 3d 1057, 1068 (D. Or. 2015)

---

[8]     Other circuits adhere to an objective test.  See, e.g., United States v. Clemens, 738 F.3d 1, 11-12 (1st Cir. 2013) (noting circuit split); United States v. Stock, 728 F.3d 287, 296 n.7 (3d Cir. 2013) (same).  In United States v. Elonis, 135 S. Ct. 2001 (2015), the Supreme Court declined to reach the issue whether a subjective intent to threaten is a necessary component of a true threat for purposes of the First Amendment.  See id. at 2012.

1  (under <u>Bagdasarian</u>, "if only one standard applies in the civil

2  context, it is the subjective standard"; however, the objective

3  standard "may also apply, depending on the statute or policy under

4  which the speaker has been punished") (citation omitted).

5

6      In the present case, under either test, the Complaint suffices to

7  allege facts that could support a conclusion that the speaker card

8  Plaintiff submitted was protected by the First Amendment.

9

10     First, applying the subjective test, Plaintiff alleges that he

11  subjectively intended the "cartoons" and statements on the speaker

12  card to express criticism of the City Council and the DWP rather than

13  any threat of violence.  The Court must "accept as true" these non-

14  conclusory factual allegations for purposes of ruling on a motion to

15  dismiss.  <u>See</u> <u>Zucco Partners, LLC v. Digimatic Corp.</u>, 552 F.3d at 989.

16

17     In applying the objective test, the trier of fact should consider

18  "the entire factual context of the statements including: the

19  surrounding events, the listeners' reaction, and whether the words are

20  conditional."  <u>United States v. Bagdasarian</u>, 652 F.3d at 1119-20

21  (citation, brackets and internal quotations omitted).  Construed

22  liberally, the Complaint alleges that: (1) Defendant Wesson previously

23  had been called "Nigger" many times by both black and white people;

24  (2) Plaintiff submitted the speaker card in the relatively formal

25  setting of a City Council meeting; (3) Plaintiff was known to be a

26  frequent attendee and commenter at City Council meetings (<u>see</u> Exhibit

27  H to Complaint); (4) Defendant Wesson became angry at Plaintiff,

28  called Plaintiff an "idiot" and threatened to beat Plaintiff up; (5)

Plaintiff was not arrested until two days later; and (6) the District
Attorney declined to prosecute Plaintiff for allegedly making criminal
threats. These factual allegations, accepted as true for purposes of
the Motion to Dismiss, could lead a reasonable person to conclude that
the speaker card did not communicate a "serious expression of intent
to harm or assault." See Watts v. United States, 394 U.S. 705, 706,
708 (1989) (mere "political hyperbole" does not amount to a true
threat; reversing conviction of draftee who stated during public event
in Washington, D.C., that "If ever they make me carry a rifle, the
first person I want to get in my sights is L.B.J. [Lyndon Baines
Johnson]"); see also Virginia v. Black, 538 U.S. at 363 (although
cross burning has "a long and pernicious history as a signal of
impending violence," burning a cross at a political rally "would
almost certainly be protected expression"); United States v.
Bagdasarian, 562 F.3d at 1115, 1119-20 (online messages "Re: Obama fk
the nigger, he will have a 50 cal in the head soon" and "shoot the
nig" did not constitute true threats); Bauer v. Sampson, 261 F.3d 775,
783-84 (9th Cir. 2001) (professor's writing of his hope to drop a
slate of granite on the head of the university president and
professor's illustration depicting the assembling and pointing of a
rifle were not true threats); United States v. Poocha, 259 F.3d 1077,
1081-82 (9th Cir. 2001) (statement "Fuck you" uttered to National Park
Service ranger and accompanied by the clenching of fists was
constitutionally protected speech).

///

///


**IV. The Complaint Does Not Show That the Collateral Attack Doctrine**

**Applies.**

Defendants contend the Complaint fails to state any First Amendment claim arising from the Superior Court restraining order because the "collateral attack doctrine" supposedly precludes this Court from reviewing that order (Defendants' Memorandum, etc., pp. 10-11).[9]

"The collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts." <u>Rein v. Providian Fin. Corp.</u>, 270 F.3d 895, 902 (9th Cir. 2001); <u>see Celotex Corp. v. Edwards</u>, 514 U.S. 300, 313 (1995). "A 'collateral attack' is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court." <u>Pratt v. Ventas, Inc.</u>, 365 F.3d 514, 519 (6th Cir. 2004) (citations omitted). For the collateral attack doctrine to apply, the court in the prior proceedings must have addressed and ruled on the specific issue or claim presented in the subsequent proceeding. <u>See Pub. Util. Dist. No. 1 of Grays Harbor Cnty. Wash. v. IDACORP Inc.</u>, 379 F.3d 641, 652 n.12 (9th Cir. 2004) (noting that there was no impermissible collateral attack in "the absence of a finding" despite plaintiff's "advanced arguments" on the issue).

---

[9] An appeal of the restraining order presently is pending in the California Court of Appeal. <u>See</u> Declaration of Wayne Spindler, ¶ 13; Plaintiff's Request for Judicial Notice, Ex. B. The Court takes judicial notice of the docket in <u>Office of the City Attorney v. Spindler</u>, California Court of Appeal case number B276413, which shows the appeal is pending. <u>See Mir v. Little Company of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of court records).

18

It is unclear from the Complaint whether Plaintiff actually seeks review or circumvention of the Superior Court's restraining order. Plaintiff generally mentions restraining orders among his allegations concerning the City's alleged pattern and practice of purportedly suppressing speech (Complaint, p. 5). Plaintiff alleges that Defendant Wesson failed to disclose his proper name on an affidavit for a restraining order, and attaches to the Complaint documents including the restraining order and affidavits allegedly filed in support of the petition for a restraining order (id., p. 18; Ex. D). Plaintiff also asserts a malicious prosecution claim based apparently on the restraining order (id., p. 25). However, the Complaint does not appear expressly to allege any First Amendment challenge to the validity of the restraining order itself.[10] Thus, on the face of the Complaint, the collateral attack doctrine appears inapplicable.

**V.  Plaintiff's Challenge to the Rules of Decorum Is Insufficient.**

Plaintiff's challenge to the Rules of Decorum is unclear and marred by the perhaps inadvertent repetition of some of Plaintiff's allegations. Plaintiff alleges that the Rules of Decorum constitute impermissible prior restraints and allow for unbridled discretionary

---

[10]    In Plaintiff's Opposition, Plaintiff does assert that the restraining order "was void the moment it was filed" and that the statute pursuant to which the restraining order assertedly was based, California Code of Civil Procedure section 527.8, purportedly is unconstitutional as applied to Plaintiff (see Opposition, pp. 11-14). These allegations, if made in a complaint, might well challenge the validity of the Superior Court's order. However, allegations in an opposition cannot augment allegations in a complaint for purposes of ruling on a motion to dismiss.  See Schneider v. California Department of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

enforcement.  However, Plaintiff fails to allege how any particular
provision or aspect of the Rules of Decorum, or any application
thereof by any Defendant, supposedly violated Plaintiff's rights.
Plaintiff refers to the apparent use of various terms such as
"impertinent," "abusive," "slanderous" or "threatening" (see
Complaint, pp. 15-16), but does not allege how (if at all) application
of these terms to Plaintiff supposedly violated Plaintiff's rights.

Under Rule 8(a) of the Federal Rules of Civil Procedure, a
complaint must contain a "short and plain statement of the claim
showing that the pleader is entitled to relief."  "Each allegation
must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).
"Experience teaches that, unless cases are pled clearly and precisely,
issues are not joined, discovery is not controlled, the trial court's
docket becomes unmanageable, the litigants suffer, and society loses
confidence in the court's ability to administer justice." Bautista v.
Los Angeles County, 216 F.3d 837, 841 (9th Cir. 2000) (citations and
quotations omitted).  Plaintiff's confused and conclusory allegations
concerning the Rules of Decorum are insufficient under these
standards.  See Ashcroft v. Iqbal, 556 U.S. at 678, 686; Ivey v. Board
of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).
///
///
///
///
///

**VI.  The Complaint States a Fourth Amendment Claim for Alleged False
Arrest and False Imprisonment.**

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citations omitted). Probable cause "exists where, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." Peng v. Mei Chin Penghu, 335 F.3d 970, 976 (9th Cir. 2003), cert. denied, 540 U.S. 1218 (2004) (citation, internal quotations and brackets omitted). If the arresting officers had probable cause to arrest, the officers' subjective motivations for the arrest are immaterial to the Fourth Amendment analysis. Whren v. United States, 517 U.S. 806, 813-15 (1996). To plead a claim for false arrest and imprisonment in violation of the Fourth Amendment, Plaintiff must allege an absence of probable cause. See Beck v. City of Upland, 527 F.3d 853, 864-66 (9th Cir. 2008).

Plaintiff alleges that officers arrested Plaintiff for making a "criminal threat" in supposed violation of California Penal Code section 422(a) (Complaint, p. 11 & Ex. B). California Penal Code section 422(a) provides:

> Any person who willfully threatens to commit a crime which
> will result in death or great bodily injury to another
> person, with the specific intent that the statement, made
> verbally, in writing, or by means of an electronic
> communication device, is to be taken as a threat, even if

there is no intent of actually carrying it out, which on its

face and under the circumstances in which it is made, is so

unequivocal, unconditional, immediate, and specific, as to

convey to the person threatened, a gravity of purpose and an

immediate prospect of execution of the threat, and thereby

causes that person reasonably to be in sustained fear for

his or her own safety or for his or her immediate family's

safety, shall be punished by imprisonment in the county jail

not to exceed one year, or by imprisonment in the state

prison.

"[T]he type of threat satisfying the criminal threat provisions of section 422 . . . constitutes speech that falls outside the protection of the First Amendment." People v. Toledo, 26 Cal. 4th 221, 233, 109 Cal. Rptr. 2d 315, 26 P.3d 1051 (2001); see People v. Morera-Munoz, 5 Cal. App. 5th 838, 850 n.7, 210 Cal. Rptr. 3d 409 (2016) (section 422 applies to "true threats, which are not protected by the First Amendment") (citations omitted).  For the reasons discussed above, Plaintiff sufficiently has alleged that the speaker card did not convey a "true threat" outside the protections of the First Amendment.  Therefore, for purposes of the present motion, Plaintiff sufficiently has alleged an absence of probable cause for his arrest for making criminal threats.

///

///

///

**VII.   Plaintiff's Excessive Force Claim Is Insufficient.**

The Complaint mentions the Eighth Amendment (Complaint, pp. 22, 27). To the extent Plaintiff attempts to state an Eighth Amendment excessive force claim, this claim is insufficient as a matter of law. The Eighth Amendment's prohibition against cruel and unusual punishment applies only after conviction. See Pierce v. Multnomah County, Oregon, 76 F.3d 1032, 1042 (9th Cir.), cert. denied, 519 U.S. 1006 (1996); see also Kingsley v. Hendrickson, 135 S. Ct. 2466, 2475 (2015). Plaintiff's claims concerning the alleged false arrest and detention of Plaintiff do not allege any Eighth Amendment violation. See Sanchez v. City of Los Angeles, 2011 WL 6951822, at *7 (C.D. Cal. Oct. 31, 2011), adopted, 2012 WL 27722 (C.D. Cal. Jan. 5 2012) (citizen removed from City Council meeting and arrested for alleged violation of City's Rules of Decorum could not assert Eighth Amendment claim).

Claims of excessive force in the context of an arrest are analyzed under the Fourth Amendment "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 394-95 (1989); Lowry v. City of San Diego, 858 F.3d 1248, 1254-55 (9th Cir. 2017) (en banc). In assessing the objective reasonableness of a particular use of force, a court considers: (1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted; (2) the government's interest in the use of force; and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion. Lowry v. City of San Diego, 858 F.3d at 1256 (citation omitted).

Here, Plaintiff alleges only that his detention on May 13, 2016 "was excessive force and cruel and unusual punishment for something

[sic] merely to try to speak at public meeting for a minute or two"
(Complaint, pp. 12-13).  Plaintiff fails to allege any facts
supporting his claim of alleged excessive force.  Plaintiff's
conclusory allegations are insufficient to state a claim of excessive
force.  See Ashcroft v. Iqbal, 556 U.S. at 678 (to state a claim for
relief a plaintiff must allege more than an "unadorned, the-defendant-
unlawfully-harmed-me accusation"; a pleading that "offers labels and
conclusions or a formulaic recitation of the elements of a cause of
action will not do"); Watkins v. Greenwood, 2016 WL 8730860, at *2
(E.D. Cal. Sept. 30, 2016) (conclusory allegations of excessive force
during arrest insufficient).[11]

**VIII.  The Complaint Fails to Plead a Municipal Liability Claim.**

    The Court must construe Plaintiff's official capacity claims
against the individual Defendants as claims against the City.  See
Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (official capacity
claims against municipal employee is a claim against the
municipality).  Plaintiff appears to allege that the City is liable
for the acts of its agents or employees on a theory of respondeat
superior (see Complaint, p. 4).  Plaintiff may not state a section

---

[11]    Contrary to Defendants' assertion, a plaintiff alleging
excessive force need not allege more than de minimis physical
injury.  See Robinson v. Solano County, 278 F.3d 1007, 1014-15
(9th Cir. 2002) (en banc) (pointing gun at close range at
plaintiff's head could constitute excessive force); Wilks v.
Reyes, 5 F.3d 412, 416 (9th Cir. 1993) (plaintiff could be
entitled to nominal damages on excessive force claim "even if the
plaintiff suffered no actual damage").  The extent of any injury
is relevant to the determination of whether the use of force was
unreasonable, however.  See Lowry v. City of San Diego, 858 F.3d
at 1256.

1983 claim against the City on a theory of <u>respondeat superior</u>, which
is not a theory of liability cognizable under 42 U.S.C. section 1983.
<u>See</u> <u>Connick v. Thompson</u>, 563 U.S. 51, 60-61 (2011); <u>Ashcroft v. Iqbal</u>,
556 U.S. at 676; <u>Polk County v. Dodson</u>, 454 U.S. 312, 325 (1981);
<u>Castro v. County of Los Angeles</u>, 833 F.3d 1060, 1073 (9th Cir. 2016)
(en banc), <u>cert. denied</u>, 137 S. Ct. 831 (2017).  A municipality may be
held liable only if the alleged wrongdoing was committed pursuant to a
municipal policy, custom or usage.  <u>See</u> <u>Board of County Commissioners</u>
<u>of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 402-04 (1997);
<u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658,
691 (1978).  Conclusory allegations do not suffice to plead a
municipal liability claim.  <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678
(plaintiff must allege more than an "unadorned, the-defendant-
unlawfully-harmed-me accusation"; a pleading that "offers labels and
conclusions or a formulaic recitation of the elements of a cause of
action will not do") (citation and internal quotation marks omitted);
<u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011) (en banc), <u>cert.</u>
<u>denied</u>, 132 S. Ct. 2101 (2012) ("allegations in a complaint or
counterclaim may not simply recite the elements of a cause of action,
but must contain sufficient allegations of underlying facts to give
fair notice and to enable the opposing party to defend itself
effectively").

        Plaintiff also generally alleges that the City has policies
and/or practices of purportedly using Rules of Decorum, criminal
prosecutions, civil restraining orders, fabricated reports, perjured
statements, press conferences and "high-powered" lobbyists to repress
speech critical of City officials (Complaint, pp. 4-6).  Plaintiff

further alleges, in conclusory fashion, that the City assertedly has failed to "train, supervise, monitor and correct" City officials who preside over public meetings and "members of General Services Police Officers, within the Department of Public Safety" (id.). Plaintiff's general, vague and conclusory allegations are insufficient to allege a Monell claim against the City. See Ashcroft v. Iqbal, 556 U.S. at 678.[12]

## IX. There Exists No Damages Remedy for Alleged Violation of the Free Speech Clause of the California Constitution.

To the extent Plaintiff requests damages for alleged violation of the free speech clause of the California Constitution, Cal. Const. Art. 1, section 2(a), any such request fails as a matter of law. There exists no damages remedy for violation of this clause. See Degrassi v. Cook, 29 Cal. 4th 333, 343-44, 127 Cal. Rptr. 2d 508, 58 P.3d 360 (2002).

///
///
///
///

## X. Plaintiff's Remaining State Law Claims Are Insufficient.

---

[12] Additionally, Plaintiff may not recover punitive damages against a governmental entity or an individual governmental officer sued in his or her official capacity. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 524 (9th Cir.), cert. denied, 528 U.S. 1003 (1999).

Plaintiff's claims for false imprisonment, attempted extortion, malicious interference with business relations, harassment, retaliation, theft and "anti-Slapp" consist only of headings (Complaint, p. 25). Plaintiff does not identify the Defendants sued on these purported claims or provide any supporting factual allegations. Such pleading is manifestly deficient under Rule 8 standards. See Ashcroft v. Iqbal, 556 U.S. at 678; McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996) (a complaint is subject to dismissal if "one cannot determine from the complaint who is being sued, for what relief, and on what theory . . . ."; Chevalier v. Ray and Joan Kroc Corps. Community Center, 2012 WL 2088819, at *2 (N.D. Cal. June 8, 2012) (complaint which did not "simply, concisely, or directly identify which wrongs were committed by which Defendant" violated Rule 8).[13]

Plaintiff's "Fabrications" claim consists only of the following sentence: "Failure to intervene in the unlawful detention and arrest by Defendants per *U.S. v. Koon*, 34 F.3d 1416 (9th Cir. 1994)." (Complaint, p. 25). Plaintiff does not describe the purported "fabrications," identify the Defendant(s) against whom this claim is brought, explain the relevance of the reference to United States v. Koon or provide any factual allegations supporting this claim. Such

---

[13] Plaintiff's purported "anti-Slapp" claim is particularly obscure. California's "anti-Slapp" statute, California Civil Procedure section 425.16, authorizes a person against whom a cause of action is asserted to move to strike that cause of action on the ground that the cause of action arises out of that person's exercise of his or her rights of petition or free speech. See Jordan-Benel v. Universal City Studios, Inc., 859 F.3d 1184, 1188-89 (9th Cir. 2017). The Complaint fails to elucidate how this statute supposedly authorizes any claim for relief in the circumstances alleged.

confusing and conclusory allegations are insufficient.  See <u>Ashcroft</u>
<u>v. Iqbal</u>, 556 U.S. at 678; <u>McHenry v. Renne</u>, 84 F.3d at 1178; Fed. R.
Civ. P. 8(a).

The Fourth Claim for Relief, which purports to assert a violation
of California's Bane Act, California Civil Code section 52.1, consists
of a heading and the following statement: "City is vicariously liable
for its acts of its employees as an employer[.]"  (Complaint, p. 25).
Plaintiff does not even attempt to allege any factual allegations
satisfying the elements of a Bane Act claim.  Again, such conclusory
allegations are insufficient.  <u>See Ashcroft v. Iqbal</u>, 556 U.S. at 678.

Plaintiff's malicious prosecution claim is based on the following
allegation: "Defendants abused the prosecution of a T.R.O. and 3 year
injunction against Plaintiff based upon a fabricated and pre-
fabricated set of facts calling a lawful action of handing in a
speaker card 'a criminal threat.'"  (Complaint, p. 25).  "In order to
establish a cause of action for malicious prosecution of either a
criminal or civil proceeding, a plaintiff must demonstrate that the
prior action (1) was commenced by or at the direction of the defendant
and was pursued to a legal termination in [plaintiff's] favor
[citations]; (2) was brought without probable cause [citations]; and
(3) was initiated with malice [citations]."  <u>Casa Herrera, Inc. v.</u>
<u>Beydoun</u>, 32 Cal. 4th 336, 341, 9 Cal. Rptr. 3d 97, 83 P.3d 497 (2004).
Plaintiff does not allege any favorable termination of the restraining
order proceedings.  An appeal of the restraining order is pending, and
"a civil action for malicious prosecution will not lie while an appeal
in the underlying action is pending."  <u>Friedman v. Stadum</u>, 171 Cal.

App. 3d 775, 778, 217 Cal. Rptr. 585 (1985) (citations omitted).
Moreover, even if Petitioner could show a favorable termination of the
restraining order proceedings, a state law malicious prosecution
action does not arise from an unsuccessful petition for a civil
restraining order.  See Robinzine v. Vicory, 143 Cal. App. 4th 1416,
50 Cal. Rptr. 3d 65 (2006); Siam v. Kizilbash, 130 Cal. App. 4th 1563,
1572-74, 31 Cal. Rptr. 3d 368 (2005); Cuviello v. Feld Entertainment,
Inc., 671 Fed. App'x 979, 980 (9th Cir. 2016).

**ORDER**

     The Motion to Dismiss is granted in part and denied in part.  The
Complaint is dismissed with leave to amend.  The Motion to Strike is
denied as moot.  If Plaintiff still wishes to pursue this action, he
is granted thirty (30) days from the date of this Order within which
to file a First Amended Complaint.  While the Court does not deem
insufficient all of Plaintiff's allegations, the Court does require
that any First Amended Complaint be complete in itself and not refer
in any manner to the prior Complaint.  Any First Amended Complaint
must comply with the requirements of Rule 8 of the Federal Rules of
Civil Procedure.  Plaintiff may not add Defendants without leave of
court.  See Fed. R. Civ. P. 21.  Failure to file timely a First
Amended Complaint in conformity with this Order may result in the
dismissal of this action.  See Pagtalunan v. Galaza, 291 F.3d 639,
642-43 (9th Cir. 2002), cert. denied, 538 U.S. 909 (2003) (court may
dismiss action for failure to follow court order); Simon v. Value
Behavioral Health, Inc., 208 F.3d 1073, 1084 (9th Cir.), amended, 234
F.3d 428 (9th Cir. 2000), cert. denied, 531 U.S. 1104 (2001),

overruled on other grounds, Odom v. Microsoft Corp., 486 F.3d 541 (9th Cir.), cert. denied, 552 U.S. 985 (2007) (affirming dismissal without leave to amend where plaintiff failed to correct deficiencies in complaint, where court had afforded plaintiff opportunities to do so, and where court had given plaintiff notice of the substantive problems with his claims); Plumeau v. School District #40, County of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997) (denial of leave to amend appropriate where further amendment would be futile).

IT IS SO ORDERED.


DATED: November 20, 2017.

_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE


PRESENTED this 12th day

of October, 2017, by:


_____/s/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE