MICHAEL N. FEUER (SBN 111529)
City Attorney
GABRIEL S. DERMER (SBN 229424)
Assistant City Attorney
DORA A. GONZALEZ (SBN 210947)
Deputy City Attorney
RUTH M. KWON (SBN 232569)
200 North Main Street, 6th Floor, City Hall East
Los Angeles, CA 90012
Telephone:   (213) 978-7564/978-6952
Facsimile:    (213) 978-7011
Email:  dora.gonzalez@lacity.org
Email:  ruth.kwon@lacity.org
Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WAYNE SPINDLER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, HERMAN J. WESSON, JR., HUGO S. ROSSITTER, ERIC READE; NELLY NAVA-MERCADO; AND DOES 1 TO 10<br><br>Defendants. | No. CV 17-00250 JLS (E)<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND MOTION FOR MORE DEFINITE STATEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:   February 23, 2018<br>Time:                 9:30 a.m.<br>Ctrm:                Royal Building & Federal Courthouse, Courtroom 750 7th Floor<br><br>Hon. Charles F. Eick<br>United States Magistrate Judge |

1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE that, on February 23, 2018, at 9:30 a.m., or as soon

3  thereafter as the matter may be heard, in the courtroom of the Honorable Charles F. Eick,

4  United States Magistrate Judge, Courtroom 750 7th Floor, Royal Federal Building and

5  United States Courthouse, 255 E. Temple St., Los Angeles, California 90012,

6  Defendants City of Los Angeles ("City"), Herman J. Wesson, Hugo S. Rossitter, Eric

7  Reade, Nelly Nava-Mercado (collectively, "Defendants"[1]) will, and hereby do, move to

8  dismiss Plaintiff Wayne Spindler's First Amended Complaint ("FAC") pursuant to Rules

9  8 and 12(b)(6) of the Federal Rules of Civil Procedure ("Rules"), for failure to meet the

10  mandatory pleading requirements and for failure to state a claim upon which relief can

11  be granted. Should the Court grant leave to amend any claims, Defendants request that

12  Plaintiff be required to provide a more definite statement pursuant to Rule 12(e).

13      This Motion is based on this Notice of Motion and Motion, the accompanying

14  Memorandum of Points and Authorities, Defendants' Request for Judicial Notice

15  ("RJN"), all pleadings and papers on file in this action, and such other matters as may be

16  presented to the Court at the time of hearing. This Motion is made following a

17  conference of counsel with Plaintiff pursuant to Local Rule 7-3, which took place by

18  telephone on December 22, 2017.

19

20   Dated: January 16, 2018                 Respectfully submitted,

21

22                                              _____

23                                              /s/
                                              RUTH M. KWON
                                              Deputy City Attorney

24                                              Attorneys for Defendants

25

26

27  _____
      [1] Defendants Nava, Reade, Rossiter, and Wesson, who are named in their official
    and individual capacities are collectively referred to as "Individual Defendants."

28

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I. INTRODUCTION ...........................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND .........................................2

    A. Pertinent Allegations and Facts Subject to Judicial Notice ........................2

        1. At the May 11, 2016 meeting, Spindler submitted a speaker card with drawings and language directed to Defendant Wesson. ........................................................................................2

        2. Spindler was arrested for criminal threats. .........................................3

        3. The state court issued a temporary Restraining Order, and after a hearing, a three-year Restraining Order ........................................3

        4. Spindler surrenders an semi-automatic AK-47 to the LAPD. ............4

        5. Spindler submitted two pre-litigation government claims. ................4

        6. Spindler filed an appeal of the Restraining Order, in which he raised Constitutional grounds ........................................................5

    B. The Instant Case .........................................................................................5

    C. The FAC .....................................................................................................5

III. Dismissal under Rules 8 and/or 12(b)(6) is warranted. .....................................6

    A. The FAC Does Not Meet the Rule 8 Standard .............................................6

    B. Each of Plaintiff's claims fails under Rule 8 and/or 12(b)(6). .....................7

        1. The Section 1983 claims do not provide notice to Defendants .........7

        2. The As-Applied claims are misconstrued or duplicative ...................8

        3. The "Municipal Liability" Claim continues to be based on a theory of respondeat superior ..........................................................9

        4. There was no taking where Plaintiff voluntarily surrendered his weapons and agreed to their destruction ...........................................10

        5. The Fabrications Claim is Wholly Unsupported ..............................10

        6. Plaintiff fails to allege a Bane Act "threat" or "coercion" ...............11

        7. The sixth claim is an impermissible Kitchen-Sink claim ................12

        8. The defamation claims fails for lack of a defamatory statement ......13

IV. Plaintiff cannot overcome absolute immunities and privileges afforded to

participants in the judicial process..................................................................14

   A.   Absolute Witness Immunity bars claims for monetary damages,
        including Section 1983 claims ......................................................14

   B.   The Litigation Privilege bars suit against Defendant Rossitter and
        most of the state claims against the remaining Defendants .......................15

   C.   Any state claim sounding in malicious prosecution should be barred
        by Section 821.6 of the Government Code. ..................................16

V.   If the Court permits Plaintiff another opportunity to amend, the Court
     should require a more definite statement...................................................17

VI.   CONCLUSION..........................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Asgan v. City of Los Angeles*,
  15 Cal. 4th 744 (1997) ................................................................................ 16

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) .................................................................................. 7

*B.H. v. County of San Bernardino*,
  62 Cal. 4th 168 (2015) ................................................................................ 16

*Barren v. Harrington*,
  152 F.3d 1193 (9th Cir. 1998) ...................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................... 6

*Brazil v. U.S. Dep't of the Navy*,
  66 F.3d 193 (9th Cir. 1995) .......................................................................... 7

*Briscoe v. LaHue*,
  460 U.S. 325 (1983) ..................................................................................... 14

*Burns v. County of King*,
  883 F.2d 819 (9th Cir. 1989) ...................................................................... 14

*Eisenberg v. Alameda Newspapers*,
  74 Cal. App. 4th 1359 (1999) ..................................................................... 13

*Franklin v. Terr*,
  201 F.3d 1098 (9th Cir. 2000) .................................................................... 14

*Fry v. Melaragno*,
  939 F.2d 832 (9th Cir. 1991) ...................................................................... 15

*Fuhrman v. California Satellite Systems*,
  179 Cal. App. 3d 408 (1986) ...................................................................... 12

*Garmon v. City of Los Angeles*,
  828 F.3d 837 (9th Cir. 2016) ...................................................................... 16

iii

*Hatch v. Reliance Ins. Co.*,
   758 F.2d 409 (9th Cir. 1985) ........................................................................ 6

*Holt v. Castaneda*,
   832 F.2d 123 (9th Cir. 1987) ...................................................................... 14

*Isaacson v. Horne*,
   716 F.3d 1213 (9th Cir. 2013) ...................................................................... 8

*Jones v. Kmart Corp.*,
   17 Cal. 4th 329 (1998) ................................................................................ 11

*Karim-Panahi v. L.A. Police Dep't*,
   839 F.2d 621 (9th Cir. 1988) ................................................................ 11, 13

*Lyall v. City of Los Angeles*,
   807 F.3d 1178 (9th Cir. 2015) .................................................................... 11

*McHenry v. Renne*,
   84 F.3d 1172 (9th Cir. 1996) ..................................................................... 6, 7

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658, 98 S. Ct. 2018 (1978) ............................................................ 9

*Nevijel v. N. Coast Life Ins. Co.*,
   651 F.2d 671 (9th Cir. 1981) ........................................................................ 6

*Oei v. N. Star Capital Acquisitions, LLC*,
   486 F.Supp.2d 1089 (C.D. Cal. 2006) ........................................................ 15

*Olszewski v. Scripps Health*,
   30 Cal.4th 798 (2003) ................................................................................ 15

*Paine v. City of Lompoc*,
   265 F.3d 975 (9th Cir. 2001) ...................................................................... 14

*Poppell v. City of San Diego*,
   149 F.3d 951 (9th Cir. 1998) ...................................................................... 16

*Rubin v. Green*
   4 Cal. 4th 1187 (1993) ................................................................................ 15

*Rusheen v. Cohen*
   37 Cal. 4th 1048 (2006) .............................................................................. 15

iv

*Shirk v. Vista Unified School Dist.*,
    42 Cal. 4th 201 (2005) ...................................................................... 11

*Silberg v. Anderson*,
    50 Cal.3d 205 (1990) ........................................................................ 15

*Summit Bank v. Rogers*,
    206 Cal. App. 4th 669 (2012) ........................................................... 13

*Van de Kamp v. Goldstein*,
    555 U.S. 335, 129 S. Ct. 855 (2009) ................................................ 15

*Visto Corp. v. Sproqit Technologies, Inc.*,
    360 F.Supp.2d 1064 (N.D. Cal. 2005) .............................................. 15

*Whitaker v. Garcetti*,
    486 F.3d 572 (9th Cir. 2007) .............................................................. 9

*Williamson County Regional Planning Commission v. Hamilton Bank of
    Johnson City*,
    473 U.S. 172, 105 S. Ct. 3108 (1985) .............................................. 10

**Federal Laws**

28 U.S.C. § 1915(e)(2)(B)(iii) ................................................................ 14

28 U.S.C. § 1983 ...................................................................................... 7

42 U.S.C. § 1997e(c)(1) .......................................................................... 14

**State Laws**

Bane Act ................................................................................. 5, 11, 12, 16

Cal. Civ. Code § 52.1 (a)-(b) .................................................................. 11

Cal. Civ. Code § 52.1(j) .......................................................................... 11

Cal. Gov. Code § 815.2 ........................................................................... 16

Cal. Gov. Code § 821.6 ........................................................................... 16

Government Claims Act; Cal. Gov. Code §§ 905, 911.2, 950.2, 956.5, 950-
    950.2 ............................................................................... 10, 11, 12

Ralph M. Brown Act  (Cal. Gov. Code § 54950 et seq.) ......................... 4, 6, 9

Cal. Code of Civ. Proc. § 47(b) ................................................................. 15

Cal. Code of Civ. Proc. § 527.8 ........................................................ 3, 4, 5, 8

Cal. Code of Civ. Proc. § 527.9 ......................................................... 4,10, 12

Cal. Pen. Code § 415 ................................................................................ 4

Cal. Pen. Code § 30605 ............................................................................ 4

Cal. Pen. Code § 422, ........................................................................ 3, 6, 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

In this case, Plaintiff Spindler, a licensed attorney, sues Defendants because he blames them for the legal and judicial consequences of his own wrongdoing.

At a May 11, 2016 City Council committee meeting in Van Nuys, Spindler sent a message directed to Defendant Herb Wesson, an African-American City Councilmember:

On a "speaker card," Spindler drew a stick-figure hanging from a tree, a burning cross atop a hill, and a hooded Ku Klux Klan figure carrying a noose. Spindler drew a sign containing the councilmember's name ("Herb"), an equal sign ("="), and the N-word. Elsewhere, he drew in bold block letters, "FUCK-U HERB."

At the meeting, Defendant Wesson permitted Spindler to speak during the public comments comment; however, Spindler became disruptive, so he was escorted out.

As a consequence of his message of racist violence, Spindler was arrested for criminal threats and hate crime by LAPD Detectives Nava and Reade of the Threat Management Unit.[2] While the County considered whether to prosecute, the City, represented by Deputy City Attorney Rossitter, petitioned for and was granted its request for a civil remedy: a narrowly-drawn Workplace Violence Restraining Order. That order, which is in effect today, allows Spindler to attend and provide public comment at any public meeting he wishes, but prevents him from harassing, following or stalking his target, Defendant Wesson.

By operation of the state law governing his Restraining Order, Spindler was required to sell, store, or surrender his weapons for three years' safekeeping.  As it turned out, among his weapons and ammunition collection, was an AK-47-type assault rifle. Charged with illegal possession of an assault weapon, Spindler reached a plea deal, under which he would plead guilty to the disturbance of the peace.  In exchange, his

---

[2]  Spindler was arrested on May 13, 2016, when he was on his way to another public meeting, this time at a City Council meeting downtown.

1

weapons were destroyed.

In January 2017, whilst his appeal to the Restraining Order was pending, Spindler filed this lawsuit in federal court. He claims that *he* is the one that was threatened and assaulted, that *his* civil rights have been violated, and that *Defendants* are to blame for damage to his reputation. He seeks to recover monetary damages for the loss of unidentified law clients, the value of his destroyed weapons, and damage to his reputation, as well as equitable relief.

Plaintiff's suit should be dismissed. First, the FAC is a "kitchen-sink" or "shotgun" pleading, which does not meet the basic pleading requirements set forth in Rules 8(a) and 12(b)(6). Despite clear direction from the Court in its Order dismissing the original Complaint, the FAC, now containing eleven-plus[3] claims, continues to be a rambling tirade of allegations that are incomprehensible, meritless, or duplicative. Most claims are barred because they were not presented in any government claim prior to filing suit. Second, amendment would not salvage Plaintiff's claims. Plaintiff's theory of liability is contrary to the immunities and privileges protecting individuals who participate in the legal and judicial process. Defendants therefore respectfully request that the FAC be dismissed. Should the Court permit another amendment, Defendant request an Order for a more definite statement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Pertinent Allegations[4] and Facts Subject to Judicial Notice

#### 1.   At the May 11, 2016 meeting, Spindler submitted a speaker card with drawings and language directed to Defendant Wesson

On May 11, 2016, Spindler submitted a speaker card at a meeting of the City

---

[3] Although there are eleven labeled "claims for relief," most of the claims for relief encompass multiple Constitutional violations and multiple other claims. See, e.g., First, Second, Fifth, Sixth, and Eight, and Tenth claims for relief.

[4] The FAC contains large swathes of irrelevant, conclusory, or incomprehensible allegations. Many allegations are unreasonable inferences on the character and credibility of individuals, including non-parties. The relevance and the logic of the allegations is not clear. As such, it is difficult to list all the alleged "facts" and nearly impossible to summarize the allegations in a coherent manner.

Council's Rules, Elections, and Neighborhood Empowerment Committee.  FAC ¶ 22. The card contained Spindler's hand-drawn depictions of a person hanging from a tree, a burning cross, and a hooded Ku Klux Klan figure carrying a noose. Spindler drew a sign containing the councilmember's name ("Herb"), an equal sign ("="), and the N-word. Elsewhere, he drew in bold block letters, "FUCK-U HERB." FAC ¶ 22 and Ex. A.

In the FAC, Plaintiff now admits that he was not expelled upon submission of the speaker card. Rather, Plaintiff alleges that he was "trying to retort to [the] libelous and slanderous comment made by Wesson." FAC ¶ 33.

### 2.    Spindler was arrested for criminal threats

Two days after the meeting, Spindler was arrested by Defendants Nava and Reade under Penal Code section 422(a), which makes it a felony to make a verbal or written threat to commit bodily harm, even if there is no intent to carry out that threat. Cal. Pen. Code § 422(a). At the time of his arrest, Spindler was on his way to City Hall to attend a City Council meeting. FAC ¶¶ 25 and 37. On December 21, 2016, the District Attorney's Office for the County of Los Angeles declined to prosecute. FAC Ex. B.

### 3.    The state court issued a temporary Restraining Order, and after a hearing, a three-year Restraining Order

While the County District Attorney considered whether to criminally prosecute, the City petitioned for a Workplace Violence Restraining Order pursuant to California Code of Civil Procedure ("CCP") § 527.8, which permits employers to obtain restraining orders on behalf of employees.  On May 19, 2016, the City, represented by Defendant Rossiter, petitioned for, and received a temporary Restraining Order.  RJN Ex. A. Spindler filed a response.  RJN Ex. B. On June 10, 2016, Spindler appeared at the hearing on the petition for the Restraining Order.  FAC Ex. R.  Defendant Wesson, appeared as a witness.  FAC, Ex. R. The Honorable Carol Boas Goodson heard Spindler's arguments regarding the First Amendment. FAC Ex. R, 89: 11-23 and 92:1-13. The court issued a three-year Restraining Order, enjoining Spindler from contacting or harassing Councilmember Wesson, but allowing him to attend City public meetings

3

and engage in public comment. FAC Ex. E

### 4. Spindler surrenders a semi-automatic AK-47 to the LAPD

Under state law, persons subject to a restraining order, may not possess firearms or ammunition while the order is in effect. CCP § 527.8(s)(1). As such, by operation of law, Spindler was required to transfer, sell, or store with a federally-licensed gun dealer his firearms for three years' safekeeping. *See* CCP § 527.9; FAC Ex. Q. Spindler decided to surrender his weapons to the LAPD.  FAC Ex. Q. Included in this collection, was an AK-47-type semi-automatic assault weapon. RJN Ex. C.

On April 4, 2017, Spindler was charged with illegal possession of an assault weapon (Cal. Pen. Code § 30605).  RJN Ex. G. As part of his plea agreement, Spindlerwas charged and convicted of disturbing the peace (Cal Pen. Code § 415). Those weapons turned over to the LAPD, were ordered destroyed. RJN Ex. G, 6.

### 5. Spindler submitted two pre-litigation government claims concerning events on May 11 and May 13, 2016.

Three days after his arrest, on May 16, 2016, Spindler submitted an administrative claim for damages to the City, which was denied.  FAC Ex.C (Claim Number 16-05540). That claim sought $750,000 in damages for the events of May 13, 2016: "false arrest," "false charge" of criminal threats, "excessive bond," "illegal detention, and violation of civil rights.  FAC Ex. C.

Also on May 16, 2016, Spindler submitted an administrative claim for damages, which was denied. FAC Ex.C (Claim Number 16-05541).  That claim sought $25,000 in damages for the events of May 11, 2016: "Herb Wesson, Jr., Council President tossed me out of a meeting because he threatened and held me in a false light, retaliating for public speech."  FAC Ex.C.  Spindler claimed that his injuries were "First Amendment, CA. Const. 2nd right, Brown Act, False light tort." FAC Ex. C.

Plaintiff does not allege any other administrative claims or amendments.

### 6. Spindler filed an appeal of the Restraining Order, in which he raised Constitutional grounds

On July 26, 2016, Spindler appealed the Restraining Order.  In addition to arguing procedural defects, Spindler attempts to invalidate the Restraining Order on federal Constitutional grounds.  RJN Ex. E, pp. 19, 22-28. On January 9, 2018, the appeal was submitted for adjudication.[5]  RJN Ex. D.

### B. The Instant Case

Plaintiff filed this action on January 11, 2017, naming five defendants: the City; Councilmember Herman S. Wesson, Jr.; Deputy City Attorney Hugo S. Rossiter; LAPD Detective Eric Reade; and LAPD Detective Nelly Nava-Mercado. Dkt. No. 1. On November 20, 2017, this Court granted in part, and denied in part, Defendants' Motion to Dismiss the original Complaint. Dkt. No. 18.  The Court dismissed the Complaint, noting that Plaintiff had failed to meet the basic pleading requirements of Rule 8 in his challenge to the Rules of Decorum, his excessive force claim under either the Fourth or Eighth Amendments, a municipal liability claim, or any of his multi-faceted state law claims. The Court held that the original Complaint had sufficiently stated facts, *which if true*, could support two narrow issues: "the speaker card Plaintiff submitted was protected by the First Amendment" and "an absence of probable cause for [Plaintiff's] arrest for making criminal threats." Dkt. No. 18, pp. 16 and 22.

### C. The FAC

On December 12, 2017, Plaintiff filed the FAC, adding five claims for relief. The resulting 11 claims are as follows:

1) "Unconstitutional Arrest;"

2) Unconstitutional Application of the Rules of Decorum;

3) "Fabrications" for falsified LAPD records;

---

[5] On January 5, 2018, undersigned counsel left a voicemail message with Plaintiff informing him that Defendants may file a motion for a stay of this action pending the outcome of his state court appeal. Plaintiff has not yet responded. Defendants may file a motion to stay, should any claims affected by the state court appeal survive dismissal.

4) Bane Act violations for the May 13, 2016 arrest and the Restraining Order;

5) "As Applied" Constitutional challenge the Civil Code Section 527.8, the statute permitting employer petitions for a Workplace Violence Restraining Order;

6) an omnibus state torts claim for "False Imprisonment, Attempted Extortion, Malicious Interfearance [sic] with Business Relations, and Intention [sic] and Negligent Infliction of Emotional Distress, and Assault and Battery;"

7) Fifth Amendment Takings claims for weapons surrendered pursuant to the Restraining Order;

8) "As Applied" Constitutional challenge to Penal Code Section 422, the criminal statute for threats;

9) "As Applied" Constitutional challenge to the Brown Act;

10) "Defamation, Invasion of Privacy, and False Light"; and

11) "Municipal Liability Claims"

## III.   Dismissal under Rules 8 and/or 12(b)(6) is warranted

### A.   The FAC does not pass muster under Rule 8

As a threshold matter, the FAC fails to comply with Rule 8(a), which requires that a pleading setting forth a claim for a relief "must contain," among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also* Fed. R. Civ. P. 8(d)(1) (each allegation of a complaint "must be simple, concise and direct."). That statement must provide fair notice to defendants of the claims against them and the grounds on which those claims rest. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level," and the statement required by Rule 8(a) must "possess enough heft" to show the plaintiff's entitlement to relief.  *Id.* at 556-57. A complaint that fails to meet the dictates of Rule 8(a) is subject to dismissal under Rule 12(b)(6).  *See id*. at 555.

Pleadings which are confusing and conclusory do not comply with Rule 8. *See, e.g.*, *McHenry v. Renne*, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (affirming dismissal of a

6

complaint that did not allow a determination of "who [was] being sued, for what relief, and on what theory, with enough detail to guide discovery"); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 415 (9th Cir. 1985) (affirming dismissal of complaints that "were confusing and conclusory and not in compliance with Rule 8"); *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673-74 (9th Cir. 1981) (affirming dismissal of a complaint that was "verbose, confusing and conclusory").

Furthermore, although *pro se* litigants are entitled to greater leeway in the interpretation of their pleadings, "those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995). Notably, "[t]he propriety of dismissal for failure to comply with Rule 8 does not depend on whether the complaint is wholly without merit." *McHenry*, 84 F.3d at 1179. Thus, even where some possible claims appear in a complaint, dismissal pursuant to Rule 8 may still be warranted.

**B.     Each of Plaintiff's claims fails under Rule 8 and/or 12(b)(6).**

Each of Plaintiff's claims for relief fails to meet the pleading requirements of Rule 8 or fails to assert a claim under Rule 12(b)(6).

**1.     The Section 1983 claims do not provide notice to Defendants**

Plaintiff's first and second claims appear to be claims brought pursuant to 28 U.S.C. §1983 ("Section 1983") as they seek damages against four individual defendants for violations of five Constitutional provisions. In order to state a Section 1983 claim, there must be factual allegations showing participation, direction of the alleged violation, or an affirmative failure to act by each Defendant. *See Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir. 1998) ("[a] plaintiff must allege facts, not simply conclusions, that show an individual was personally involved in the deprivation of his civil rights."); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

1   Constitution.")

2         Plaintiff's first claim for "unconstitutional arrest," does not assert which

3   Defendants are subject to the claim or how each of the four constitutional provisions is

4   implicated by any misconduct. Further compounding the confusion, Plaintiff now alleges

5   that the claim encompasses two separate incidents: his "expulsion" from the meeting on

6   May 11, 2016 and his "arrest" on May 13, 2016. FAC ¶ 61. Plaintiff has also alleged

7   post-custody conduct in the passive voice, obscuring the identities of the implicated

8   Defendants.  *See, e.g.*, FAC ¶64 ("Plaintiff was hurt"); ¶65 ("plaintiff was told to sign a

9   confession"); ¶65 ("hurt shoved into the squad car"); ¶ 65 ("was also housed with

10  dangerous others"). The first claim should be dismissed under Rule 8.

11        Plaintiff's second claim for "enforcement of the rules of decorum," on the other

12  hand, is expressly asserted against all Individual Defendants (*see* FAC 27:26-27);

13  however, there are no allegations from which to infer that any Defendant, other than

14  Defendant Wesson, had any involvement with the City's meeting rules.

15        Moreover, the FAC now contains allegations, which if true, demonstrate that

16  Plaintiff disrupted the meeting. *See* FAC ¶ 33 (Plaintiff was "trying to retort to this

17  libelous and slanderous comment made by Wesson."). Plaintiff's newly added excuse

18  that his disruptive conduct was justified because Defendant Wesson "interrupted" or

19  "disrupted" the meeting first is irrelevant.  *See* FAC ¶ 66. Plaintiff has failed to

20  demonstrate how any "enforcement" of the Rules of Decorum constituted viewpoint

21  discrimination under the First Amendment or violated any other provision of the

22  Constitution. Plaintiff's second claim should be dismissed.

23                   **2.    The As-Applied claims are misconstrued or duplicative**

24        Plaintiff's newly-added "as-applied" claims (the Fifth, Eighth, and Ninth claims

25  for relief) should be dismissed pursuant to Rule 8 and/or 12(b)(6). An as-applied

26  challenge to the constitutionality of a statute, analyzes whether specific government

27  conduct in applying a statute was unconstitutional. "The facial versus as-applied

28  distinction is relevant when a claimed statutory defect applies to a sub-category of the

people affected by the law, and the court must determine whether that particular sub-category may challenge the statute as a whole, including its application to people who are not similarly situated." *Isaacson v. Horne*, 716 F.3d 1213, 1231 (9th Cir. 2013).

In the instant case, Plaintiff alleges that he is bringing "as-applied challenges" to the statute permitting Workplace Violence Restraining Orders (CCP Section 527.8), the criminal statute for criminal threats (Cal. Penal Code § 422), and the Ralph M. Brown Act (Cal. Gov. Code § 54950 et seq.).  But Plaintiff's underlying theory for each as-applied challenge is *not* that there is a statutory defect such that City's application of these statutes to his circumstances was unconstitutional. Rather, Plaintiff appears to be arguing either that his conduct is not subject to the pertinent statute or that the Defendants have violated the statutes. *See* FAC ¶71 (alleging the Restraining Order was procedurally invalid under the CCP); ¶75 (alleging that the speaker card was not a criminal threat); ¶76 (Defendants' harassing conduct violates Brown Act).   It is unclear against whom these as-applied challenges are brought, what type of relief is sought (equitable or monetary relief), or how these claims differ from Plaintiff's other claims, which discuss the very same governmental conduct and statutes.  Plaintiff's as-applied claims should be dismissed.

### 3.   The "Municipal Liability" Claim continues to be based on a theory of respondeat superior

As the Court previously explained to the Plaintiff, Section 1983 suits against local governments alleging constitutional rights violations by government officials cannot rely solely on a theory of *respondeat superior*.  Dkt. No. 18, 27; *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018 (1978).  In the FAC, Plaintiff continues to do just that. *See* FAC ¶ 83 (Individual Defendants "were employed by the Defendant City of Los Angeles"). Further, Plaintiff's allegations of a purported custom or policy continue to be conclusory, and thus deficient.  *See, e.g.*, FAC ¶ 7 ("[t]he City has an unwritten policy of allowing civil rights violations such as those that have occurred against the Plaintiff.")  Plaintiff's

1   eleventh claim for "municipal liability claims" should be dismissed.

2        **4.    There was no taking where Plaintiff voluntarily surrendered his**

3             **weapons and agreed to their destruction**

4        Plaintiff's newly-added Takings claim is a non-starter.  The Fifth Amendment

5   prohibits the taking of private property for public use without just compensation. U.S.

6   Const. amend. V. Here, the City did not take Spindler's weapons, nor were the weapons

7   utilized for public use.  Rather, by operation of state law governing the judicial

8   Restraining Order, Spindler could transfer, sell, or store with a federally licensed gun

9   dealer any of his firearms for three years' safekeeping. *See* CCP § 527.9; FAC Ex. Q.

10  Rather than doing so, Spindler surrendered the weapons to the LAPD.  FAC Ex. Q.

11  Plaintiff himself attaches correspondence informing him that he may retrieve his

12  firearms for his proper transfer, as they would be subject to destruction.  FAC Ex. Q.

13       Furthermore, Plaintiff's claim that the ultimate destruction of his weapons

14  constitutes a taking is belied by his factual allegations and judicially noticeable facts.

15  Spindler entered into a plea agreement, pursuant to which he agreed to the destruction of

16  his weapons.  RJN Ex. G.  Therefore, any takings claim was forfeited.  Although

17  Plaintiff asserts that he was coerced to enter into a plea agreement (FAC ¶ 33), he does

18  not present any facts from which to infer that the plea agreement was invalid.

19       Regardless, Plaintiff fails to allege or demonstrate that his takings claim is ripe. A

20  takings claim against a public entity is not ripe if a property owner has an adequate

21  remedy under state law for obtaining just compensation and the property owner has not

22  availed himself of that process. *Williamson County Regional Planning Commission v.*

23  *Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S. Ct. 3108 (1985).  Plaintiff does not

24  allege or demonstrate that he presented a government claim to the City, within six

25  months after a taking claims theoretically accrued. *See* Cal. Gov. Code §§ 905, 911.2,

26  956.5, 950-950.2; FAC Ex. C. Plaintiff's takings claims should be dismissed.

27        **5.    The Fabrications Claim is unsupported by fact**

28       Plaintiff's third claim for relief, "Fabrications," now alleges that LAPD records

                                        10

regarding a "disruption" were falsified.  The FAC does not allege which particular records were falsified, who falsified the records, the nature of the falsification, or how such falsified records were used to Plaintiff's detriment. It is unclear whether Plaintiff is relying upon federal or state law, and the FAC continues to provide no explanation for the citation to *U.S. v. Koon*. *See* FAC ¶ 68; Dkt. No. 18, 27. Plaintiff's allegations do not comply with Rule 8, much less Rule 9(b), which also applies to claims sounding in fraud.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.")

In any case, Plaintiff fails to allege or to demonstrate timely presentation of an administrative claim to support a "fabrications claim." *See* Cal. Gov. Code §§ 905, 945.4, 950.2. Timely presentation of claims is not merely a procedural requirement but is an element of Plaintiff's cause of action.  *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988); *Shirk v. Vista Unified School Dist.*, 42 Cal. 4th 201, 209 (2005). Neither claim attached to the FAC contains any reference to any fabricated LAPD records. Accordingly, the fabrications claim is barred.

6. **Plaintiff fails to allege a Bane Act "threat" or "coercion"**

The Bane Act provides a cause of action for individuals whose "rights secured" by federal or California law have been interfered with "by threat, intimidation or coercion." Cal. Civ. Code § 52.1 (a)-(b).  The Bane Act provides that speech alone is not sufficient to constitute a violation unless it involves a credible threat of violence.  Cal. Civ. Code § 52.1(j).  It is well-settled California law that in order to state a Bane Act violation for law enforcement searches and detentions, there must be allegations of "threats or coercion beyond the coercion inherent in a detention or search." *See Lyall v. City of Los Angeles*, 807 F.3d 1178, 1196 (9th Cir. 2015).

The FAC appears to allege that the purported Bane Act "threat," "intimidation," or "coercion" is Spindler's arrest and 8-hour custody. The FAC does not allege threat or coercion beyond the conditions inherent in the arrest and detention. Plaintiff also appears to allege that Defendant Rossiter's petition for a Restraining Order, resulting in the

11

1    surrender of his weapons, was coercive under the Bane Act. FAC ¶169. Plaintiff has not

2    alleged any threat or coercion beyond that which is inherent in any petition for a

3    restraining order.[6]

4          Regardless, this claim should be dismissed because Plaintiff has not alleged or

5    demonstrated timely presentation of a Bane Act claim under the Government Claims

6    Act.  Although the claims attached to the FAC were submitted three days after Spindler

7    was arrested, the claims make no mention a Bane Act claim. And while one claim

8    references "threatening" speech at the May 11, 2016 meeting and "excessive bond,"

9    neither claim references any of the later conduct (May 13, 2016 and after), which is

10   alleged to form the basis of the Bane Act claim. Plaintiff's Bane Act claim should be

11   dismissed.

12                    7.    **The sixth claim is an impermissible Kitchen-Sink claim**

13         Plaintiff's sixth claim for relief encompasses the "claims" of false imprisonment,

14   "attempted" extortion, malicious interference with business relations, and the newly

15   added claims of intentional and negligent infliction of emotional distress and assault and

16   battery. Lacking facts to support each of these sub-claims, Plaintiff lumps together

17   claims, Defendants, conduct, and injuries. The FAC alleges that all the Defendants are

18   liable for multiple false arrests, assaults, and batteries, without explaining what conduct,

19   by whom, constitutes each arrest, assault, or battery.  FAC ¶ 72. In support of the

20   "attempted" extortion claim, Plaintiff speculates that Defendants orchestrated a series of

21   events in order to obtain money from Plaintiff. FAC ¶ 73. However, Plaintiff does not

22   allege that any such money was requested from him.[7] Asserting "malicious interference

23   with business relations," Plaintiff does not identify the Defendants subject to the claim,

---

24
25         [6] Here, permitting Plaintiff's Bane Act claim would run contrary to the legislative
     intent to "stem the tide of hate crimes."  *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 338
     (1998).

26         [7] In order to assert a civil claim for extortion, there must have been a threat of
27   prosecution accompanied by knowledge of the falsity of the claim, and the wronged
     party must have paid the money demanded. *See Fuhrman v. California Satellite Systems*,
28   179 Cal. App. 3d 408 (1986) (overruled on other grounds). Here, Plaintiff asserts an
     "attempted" extortion claim.

the contractual relationship which was disrupted, any Defendant's knowledge of the contractual relationship, the specific conduct which injured the relationship, or the specific damages.  Instead, Plaintiff alleges only that bad publicity ruined his reputation "with the Court system and others in the legal profession" and intimates problems with his clients. FAC ¶¶ 72, 53-54.  Finally, in support of his claims for emotional distress, Plaintiff fails to point to any negligent or intentional conduct, by any particular Defendant, which caused compensable emotional distress damages.

Sufficiency of pleadings aside, Plaintiff did not present timely administrative claims to support the entirety of this "kitchen-sink" claim.  While there is reference to "false imprisonment," the administrative claims reference nothing approaching the assaults, batteries, or extortion alleged in the FAC. Plaintiff's failure to present a timely administrative claim bars those claims now. *Karim-Panahi*, 839 F.2d at 627.

### 8.    The defamation claims fails for lack of a defamatory statement

Plaintiff's tenth claim for relief combines three state law claims for "defamation, invasion of privacy, and false light." In order to state a claim for defamation, plaintiff must allege a false statement with a "provable falsehood," unprivileged publication, and damage.  *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 695-696 (2012).  The false light claim stands and falls with the defamation claim here. *Eisenberg v. Alameda Newspapers*, 74 Cal. App. 4th 1359, 1385 n. 13 (1999) ("When a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous.")

In the instant case, Plaintiff does not allege any provably false statement by any Defendant, nor any basis upon which to infer that any Defendant caused the purported damages. Rather, Plaintiff alleges that the media broadcasted authentic photographs of him "wearing a KKK style hood" without providing context.  *See* FAC ¶ 78; *see also* ¶ 28 (news crew "forced [Plaintiff] to talk to them with cameras rolling. They broadcast the interview and edited out anything remotely giving the Plaintiff's side of what happened."); ¶ 51 ("national media covered this situation and forever has labeled Plaintiff"); ¶ 53 (alleging that "[s]omeone has been seeking out Plaintiff's clients and

getting them to file bar complaints or demand all their money back in droves."). Plaintiff's speculative allegations are insufficient to pass muster under Rules 8 and/or 12(b)(6).

Finally, although Plaintiff presented a timely administrative claim asserting that Defendant Wesson placed him in a "false light" at the Council committee meeting on May 11, 2016, there is no reference to any defamatory statements or conduct by any other Defendants, or by any Defendant after May 11, 2016 time. Plaintiff's defamation claim is therefore defective and should be dismissed.

## IV. Plaintiff cannot overcome absolute immunities and privileges afforded to participants in the judicial process

Even if afforded an opportunity to amend the FAC, this suit is partially, if not entirely barred, by absolute immunities and privileges protecting individuals who participate in the litigative and judicial process.

### A. Absolute Witness Immunity bars claims for monetary damages, including Section 1983 claims

In a Section 1983 case, "the court shall dismiss the case at any time if the court determines that the action or appeal seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(iii); *see also* 42 U.S.C. § 1997e(c)(1). Individuals, including government officials and police officers, who serve as witnesses are absolutely immune from suit for damages with respect to their testimony. *See Briscoe v. LaHue,* 460 U.S. 325, 326 (1983); *Paine v. City of Lompoc*, 265 F.3d 975, 980 (9th Cir. 2001); *Franklin v. Terr*, 201 F.3d 1098, 1101-02 (9th Cir. 2000). This immunity extends to testimony given at pre-trial hearings and testimony submitted in an affidavit. *See Holt v. Castaneda*, 832 F.2d 123, 127 (9th Cir. 1987); *Burns v. County of King*, 883 F.2d 819, 823 (9th Cir. 1989) (per curiam).

Courts have recognized that without absolute immunity, witnesses "might be reluctant to come forward to testify," and even if a witness took the stand, the witness "might be inclined to shade his testimony in favor of the potential plaintiff, to magnify

14

1  uncertainties, and thus to deprive the finder of act of candid, objective, and undistorted

2  evidence" for fear of subsequent liability. *Briscoe*, 460 U.S. at 333. As such, witness

3  immunity extends to shield claims of perjurious testimony and conspiracies to commit

4  perjury.  *Franklin*, 201 F.3d at 1101.

5      The logic of Plaintiff's "conspiracy" allegations is fuzzy at best. It appears that

6  Plaintiff believes that the Individual Defendants conspired to falsely testify in the

7  criminal and civil proceedings so as to extort Plaintiff for money. *See, e.g.,* FAC ¶ 44-46;

8  53-60. Even if Plaintiff sufficiently alleged facts to support such conspiracy claims,

9  those claims would be barred by witness immunity. The suit is therefore defective, and

10  should be dismissed.

11  **B.   The Litigation Privilege bars suit against Defendant Rossitter and most**

12  **of the state claims against the remaining Defendants**

13      Codified at California Code of Civil Procedure Section 47(b), the litigation

14  privilege applies to protect communications made by a litigant in connection with a

15  judicial proceeding to achieve the object of litigation. *Oei v. N. Star Capital*

16  *Acquisitions, LLC*, 486 F.Supp.2d 1089, 1099 (C.D. Cal. 2006). The privilege applies to

17  any communication (1) made in a judicial or quasi-judicial proceeding, (2) by litigants or

18  other participants authorized by law, (3) to achieve the objects of litigation, (4) and

19  which has some connection or logical relation to the action. *Silberg v. Anderson*, 50

20  Cal.3d 205, 212 (1990). Its "principal purpose is to afford litigants and witnesses the

21  utmost freedom of access to the courts without fear of being harassed subsequently by

22  derivative tort actions." *Olszewski v. Scripps Health*, 30 Cal.4th 798, 830-31 (2003).

23  This privilege is "absolute, not qualified." *Visto Corp. v. Sproqit Technologies, Inc.*, 360

24  F.Supp.2d 1064, 1068 (N.D. Cal. 2005); *Rubin v. Green* 4 Cal. 4th 1187, 1193 (1993).

25      The privilege is not limited to statements made during a trial or other proceedings,

26  but may extend to steps taken before and after trial. *See Rubin*, 4 Cal. 4th at 1194-1995;

27  *Rusheen v. Cohen* 37 Cal. 4th 1048 (2006). The privilege protects against defamation and

28  other torts, but not malicious prosecution. *Silberg*, 50 Cal. 3d at 212.

In the instant case, Plaintiff's entire theory of liability against Defendant Rossitter[8] is based upon Defendant Rossitter's participation in the judicial process for obtaining the Restraining Order. *See* FAC ¶ 27 ("filing of a "workplace violence training order); ¶ 27 ("arranging the hearing date"); ¶¶ 44-45 (preparing an affidavit); ¶ 60 (prosecuting and obtaining a 3-year injunction). Plaintiff also claims that Defendant Wesson is liable for a role in "directing" the TRO.  *See* FAC ¶¶ 60, 71, 74. Plaintiff even alleges that Defendant Reade is liable for having "served" the resulting Restraining Order. *See* FAC ¶¶ 27, 71, and 74.

As such, all claims against Defendant Rossitter should be dismissed, and the state tort claims against the remaining Defendants should be dismissed to the extent that they arise from the Defendants' participation in the judicial process of obtaining a restraining order.

**C.      Any state claim sounding in malicious prosecution should be barred by Section 821.6 of the Government Code.**

Under California Government Code section 821.6, "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment even if he acts maliciously and without probable cause." Cal. Gov. Code § 821.6; *B.H. v. County of San Bernardino*, 62 Cal. 4th 168 (2015); *Asgan v. City of Los Angeles*, 15 Cal. 4th 744 (1997). When a public employee is immune from liability, the public employer is also immune. Cal. Gov. Code § 815.2.

Intermediate state appellate courts have held that the immunity extends to tort such as negligent infliction of emotional distress, violation of the California

---

[8] Depending upon Plaintiff's theory of liability, Defendant Rossitter may also be entitled to the protection of prosecutorial immunity for prosecutorial acts on behalf of the City. Government prosecutors are entitled to absolute prosecutorial immunity for acts taken in their official capacity. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 129 S. Ct. 855, 861 (2009). The absolute prosecutorial immunity also applies to government civil attorneys. *See Fry v. Melaragno*, 939 F.2d 832, 837-38 (9th Cir. 1991).

16

Constitution, as well as Bane Act claims. *Poppell v. City of San Diego*, 149 F.3d 951 (9th Cir. 1998). The Ninth Circuit, however, has recently interpreted Section 821.6 to apply only to malicious prosecution actions. *Garmon v. City of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016). Although the FAC no longer expressly includes a malicious prosecution claim, Plaintiff's theory of liability appears to be that the Defendants acted maliciously and without probable cause when petitioning for the TRO. As such, any claim sounding in malicious prosecution should be dismissed as barred.

## V.     If the Court permits Plaintiff another opportunity to amend, the Court should require a more definite statement

If the Court permits Plaintiff leave to amend any claim, Defendants respectfully request a more definite statement, pursuant to Rule 12(e). If a pleading is so vague and ambiguous that a defendant "cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement." Pertinent here is Rule 10(b), which requires that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense." Fed. R. Civ. P. 10(b).

As explained herein, none of Plaintiff's labeled "claims for relief" identify, by name or conduct, the Defendant who is subject to the claim. Plaintiff does not allege, even generally, which factual incidents underlie each claim.  Plaintiff does not allege which Constitutional provision or law a Defendant has purportedly violated. The confusion is exacerbated by Plaintiff's kitchen-sink claims, which embrace multiple torts and several Constitutional provisions. The result is that the Defendants do not know which claims are asserted against them, much less how to respond with facts and defenses.

Defendants therefore respectfully request that if the Court permits leave to amend, that Plaintiff be required to separate each claim by transaction or occurrence.  Fed. R. Civ. P. 10(b).  Defendants also request that for each claim, Plaintiff be required to identify the implicated Defendant (by name) and capacity (official or individual

capacity); the legal basis underlying the claim (the particular Constitutional provision or state law), and the relief (damages or equitable relief) sought by the claim.  Absent a more definite statement, Defendants will suffer prejudice and incur unnecessary expense and confusion through discovery, motion practice, and trial.

## VI.   CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss and dismiss the instant case. Should the Court be inclined to permit leave to amend, Defendants request that Plaintiff be required to file a more definite statement.

Dated: January 16, 2018                    Respectfully submitted,


_____/s/_____
RUTH M. KWON
Deputy City Attorney

Attorneys for Defendants